MAYER, Circuit Judge.
 

 Michael R. Wood appeals from an order of the United States District Court for the Southern District of Florida, No. 90-1628-CIV-RYSKAMP (S.D.Fla. Jan. 8, 1991), granting the motion of the United States and Northrop Worldwide Aircraft Services, Inc., to transfer Wood’s case to the United States Claims Court. We affirm. He also appeals an order transferring the case from the United States District Court for the Northern District of California to the Southern District of Florida. We dismiss that appeal.
 

 Background
 

 Although the facts are in dispute, for the purposes of this appeal we accept the allegations in the amended complaint as true and construe them favorably to Wood.
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The controversy arose in the aftermath of a forfeiture auction of airplanes seized by the United States Customs Service conducted by Northrop on November 5, 1986, in Miami, Florida. At the auction, Wood attempted to purchase two 1975 Piper Embraer airplanes.
 

 According to Wood, before the auction, Richard W. Dewees, the auctioneer, and John Bolding, a Northrop employee, represented that both had current certificates of airworthiness and were cleared for operation within the United States. Twenty minutes before the sale, Bolding warranted that the airplanes would be issued Federal Aviation Administration (FAA) airworthiness certificates. And at all times, Northrop and Bolding were agents of the government.
 

 Wood’s was the highest bid ($38,000) for one of the airplanes, and he tendered a bid deposit of $5,000. One Najman Eisenman bid $37,000 for the other craft, and Wood alleges that Eisenman assigned this bid to him. Northrop refused to accept a deposit on that airplane from Wood.
 

 On February 10, 1987, Northrop informed Wood that the FAA would not be issuing a certificate of airworthiness for the Piper on which he had made a deposit. Instead, it would issue a one-time flight certificate for export from the United States or to a facility where the aircraft
 
 *197
 
 would be dismantled. Northrop told Wood that he had ten days to either pay the $33,000 balance or accept a refund of his deposit. On February 19, 1987, Wood placed $33,000 in a trust fund and notified Northrop that the money would not be transferred to Northrop until FAA clearances were obtained.
 

 In March 1987, Wood travelled to Brazil, where the planes had been assembled with American parts, to examine documents concerning their airworthiness. Wood alleges that Brazilian certificates of airworthiness had issued on the planes. With certificates of airworthiness, Wood asserts the airplanes’ value is no less than $140,000 each, but without the certificates, their value is not more than $5,000 each. The FAA has not yet issued certificates of airworthiness, and Wood has not taken possession of either airplane.
 

 On November 14, 1989, Wood filed this suit in the United States District Court for the Northern District of California. The complaint contains eighteen claims for relief, nine for each airplane. By count in the complaint, they are:
 

 (1-2) Specific performance;
 

 (3-4) Damages for breach of express warranty;
 

 (5-6) Replevin;
 

 (7-8) Declaratory relief as to ownership of the airplanes;
 

 (9-10) Declaratory relief as to the airworthiness of the airplanes;
 

 (11-12) Quiet title;
 

 (13-14) Damages under the Federal Tort Claims Act for negligence of the Customs Service and Northrop;
 

 (15-16) Damages under the Federal Tort Claims Act for negligence of FAA; and
 

 (17-18) Conversion.
 

 The United States and Northrop jointly moved to transfer the case to the more convenient Southern District of Florida. The motion was granted on July 15, 1990. They then moved separately that the Southern District of Florida court transfer the case to the Claims Court because of the absence of subject matter jurisdiction. The court granted their motions on January 8, 1991, stating:
 

 In the instant case, plaintiff attempts to characterize his claim as a tort claim for negligence. As is evident from the complaint, plaintiff’s claim is based upon a contract in which defendants allegedly agreed to sell two Piper airplanes to plaintiff. Where the claim is essentially for breach of contract and the liability depends on the government’s alleged promise, jurisdiction is based on the Tucker Act not on the Federal Tort Claims Act.
 
 Woodbury v. United States,
 
 313 F.2d 291, 296 (9th Cir.1963).
 

 Under authority of 28 U.S.C. § 1292(d)(4)(A) (1988), Wood appeals the order of transfer to the Claims Court as well as the transfer from California to the Southern District of Florida.
 

 Discussion
 

 I.
 

 Section 1292(d)(4)(A) was enacted in 1988 to provide for appellate review of transfers between the federal district courts and the Claims Court. These transfers are inevitable because of the confusing split jurisdiction over claims against the United States based on the Constitution, federal statutes and regulations, and contracts with the United States: the Claims Court has jurisdiction over all such claims, 28 U.S.C. § 1491(a)(1), while the district courts have concurrent jurisdiction over claims for $10,000 or less,
 
 id.
 
 § 1346(a)(2), and exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act,
 
 id.
 
 § 1346(b).
 

 Before 1988, transfers from the district courts to the Claims Court were unappealable as interlocutory orders. Therefore, the transfer order would be reviewable only after a final judgment issued. This was considered to be wasteful of judicial resources if the appellate court ultimately concluded the trial court lacked jurisdiction.
 
 See
 
 Commentary on 1988 Revision, following 28 U.S.C.A. § 1292 (West Supp.1991). Section 1292(d)(4)(A) solves this problem by providing for immediate review of transfer orders in this court:
 

 
 *198
 
 The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court under section 1631 of this title.
 

 II.
 

 Wood alleges that defendants breached their express warranty that the airplanes would have FAA certificates of airworthiness, and requests damages and specific performance. These claims clearly are contractual. He also sues for the negligence of the United States and Northrop under the Federal Tort Claims Act, for replevin, and for conversion of personal property. These claims arise from the same facts as the contractual claims and in fact, are mere surplusage to the primary claim for breach of contract.
 

 “If contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction.”
 
 Fountain v. United States,
 
 192 Ct.Cl. 495, 427 F.2d 759, 761 (1970). If an action arises “primarily from a contractual undertaking,” jurisdiction lies in the Claims Court “regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.”
 
 San Carlos Irrigation and Drainage Dist. v. United States,
 
 877 F.2d 957, 960 (Fed.Cir.1989) (quoting
 
 H.F. Allen Orchards v. United States,
 
 749 F.2d 1571, 1576 (Fed.Cir.1984)). Thus, since the primary thrust of Wood’s complaint is breach of contract, even if a negligence cause would lie, the Claims Court would retain jurisdiction over the suit. By merely adding a negligence count to his contract action, he does not escape the Tucker Act.
 
 Olin Jones Sand Co. v. United States,
 
 225 Ct.Cl. 741, 745 (1980) (“Where ... a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract.”)
 

 Wood’s attempt to align his case with
 
 Love v. United States,
 
 871 F.2d 1488 (9th Cir.1989), is in vain. In
 
 Love,
 
 a contract was only an “underlying element of the tort,”
 
 id.
 
 at 1493, while here, the alleged contract establishes the cause of action. Our case is more akin to
 
 Woodbury v. United States,
 
 313 F.2d 291, 295 (9th Cir.1963):
 

 Many breaches of contract can also be treated as torts. But in cases such as this, where the “tort” complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to “waive the breach and sue in tort” brings the case within the Federal Tort Claims Act.
 

 This is precisely what we have; Wood’s primary complaint is that the government and Northrop promised to provide a certificate of airworthiiiws and reneged. The other claims flow from this broken promise. Because Wood’s claim is “essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government’s alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.”
 
 Id.
 
 at 296.
 

 Indeed, as far as we can see, Wood makes out no viable claims for negligence. He alleges that the government and Northrop are liable for not abiding by the Brazilian-American Treaty, Certificates of Airworthiness for Imported Aircraft Products and Components, June 16, 1976, U.S.Braz., T.I.A.S. No. 8384, and for violating 49 U.S.C.App. § 1508(b) (1988). But “the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA.”
 
 Art Metal-U.S.A., Inc. v. United States,
 
 753 F.2d 1151, 1157 (D.C.Cir.1985). Instead, “the test established by the Tort Claims Act for determining the United States’ liability is whether a private person
 
 *199
 
 would be responsible for similar negligence under the laws of the State where the acts occurred.”
 
 Rayonier, Inc. v. United States,
 
 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957).
 

 This is because the FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law. Duties set forth in
 
 federal law
 
 do not, therefore, automatically create duties cognizable under
 
 local tort law.
 
 The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law.
 

 Art Metal-U.S.A.,
 
 753 F.2d at 1157 (citation omitted).
 

 Any alleged “duties” set forth in the treaty and section 1508(b) are directed to the government’s regulation of airlines and are not analogous to duties covered by tort law. In fact, the treaty only
 
 permits
 
 reciprocity in granting airworthiness certificates if all requirements of the/ granting authority are met. Section 1508(b) only
 
 permits
 
 reciprocal airworthiness certificates to be issued if to do so would be “in the interest of the public.” Therefore, they only provide guidance to the FAA; they do not obligate it to grant reciprocal airworthiness certificates and in no way create any duty to persons in Wood’s shoes.
 

 The conversion claim is entirely dependent on the contract claim. This is because the only way Wood could succeed in proving conversion is to prove the existence of a contract sufficient to give him an ownership interest in the airplanes, and that the United States wrongfully deprived him of that interest, presumably by not granting airworthiness certificates.
 

 We are not unmindful of other impediments to Claims Court resolution of this case on the merits. For example, remedies beyond damages, such as specific performance, are not available, and the viability of the suit depends on privity between Wood and the government. Absent that, the amenability of Northrop to the jurisdiction of the court is not apparent. But we pretermit these issues pending the necessary findings and conclusions by the trial court.
 

 III.
 

 Wood argues that the Claims Court is divested of jurisdiction under the “treaty exception,” 28 U.S.C. § 1502 (1988), which provides, “Except as otherwise provided by Act of Congress, the United States Claims Court shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations.” Specifically, he alleges that his claims grow out of or are dependent upon the Brazilian-American Treaty of June 16, 1976. In Wood’s view, the Treaty creates absolute reciprocity in the granting of airworthiness certificates; since Brazil issued a certificate of airworthiness for the aircraft, the United States also was bound to certify the planes safe for flight. He points to this duty as the foundation for his claim. Even if Wood’s exaggerated interpretation of the treaty were valid, however, he would be wrong about the Claims Courts’ jurisdiction.
 

 Section 1502 has been given a narrow interpretation; its applicability is limited to those cases relying so heavily on a treaty that, but for the treaty, the plaintiff’s claim would not exist.
 
 Hughes Aircraft Co. v. United States,
 
 209 Ct.Cl. 446, 534 F.2d 889, 904 (1976). “The real issue to be determined for purposes of § 1502 is not ... whether the
 
 Government’s
 
 activities were delimited by or dependent upon the [treaty], but whether
 
 plaintiffs claim
 
 so depends.”
 
 Id.
 
 534 F.2d at 903. And, as the Supreme Court said about Section 1066 of the Revised Statutes of 1874, the predecessor of section 1502,
 
 *200
 

 United States v. Weld,
 
 127 U.S. 51, 57, 8 S.Ct. 1000, 1003, 32 L.Ed. 62 (1888).
 

 
 *199
 
 We are of opinion, however, that such a
 
 dependency upon
 
 or
 
 growing out of,
 
 is too remote to come within the meaning of § 1066, Rev.Stat. In our view of the case, the statute contemplates a
 
 direct
 
 and
 
 proximate
 
 connection between the treaty and the claim, in order to bring such claim within the class excluded from the jurisdiction of the Court of Claims by § 1066, Rev.Stat.
 

 
 *200
 
 At most, the Brazilian-American Treaty may help to determine whether or not the FAA was obligated to grant a certificate of airworthiness on the airplanes. In this'determination, the Claims Court is free to “construe or apply a treaty,”
 
 S.N.T. Fratelli Gondrand v. United States,
 
 166 Ct. Cl. 473, 478 (1964), because it has jurisdiction over cases in which the government’s action may be judged against a treaty,
 
 Hughes,
 
 534 F.2d at 903. That, of course, is precisely what Wood alleges: the government was obligated to grant a certificate of airworthiness on the airplanes. But, the focus of the claim is that he was not able to purchase them with certificates of airworthiness. The treaty does not create that right.
 

 IV.
 

 Finally, Wood asks us to review the transfer of his case from the Northern District of California to the Southern District of Florida. We cannot. A transfer order is interlocutory, not final and appeal-able.
 
 Sunshine Beauty Supplies, Inc. v. United States Dist. Court for the Cent. Dist.,
 
 872 F.2d 310, 311 (9th Cir.1989). Wood’s only avenue for relief from the transfer was by writ of mandamus from the Court of Appeals for the Ninth Circuit to the District Court for the Northern District of California.
 
 Id.; NBS Imaging Sys., Inc. v. United States Dist. Court for the E. Dist.
 
 841 F.2d 297, 298 (9th Cir.1988). Section 1292(d)(4)(A) gives us no jurisdiction over the order of transfer to a more convenient venue. Neither its language nor its purpose suggests that Congress wanted this court to review prior interlocutory orders unrelated to Claims Court transfer orders.
 

 Conclusion
 

 Accordingly, the order of the United States District Court for the Southern District of Florida is affirmed and the appeal from the order of the United States District Court for the Northern District of California is dismissed.
 

 AFFIRMED AND DISMISSED.