Adnan AWAD, Plaintiff–Appellant,

and

Lynn Awad, Plaintiff,

v.

UNITED STATES and Allen Maxwell, Ed Needham, and Dana Dickson, In Their Individual Capacities, Defendants–Appellees.

No. 01–1440.

United States Court of Appeals, Federal Circuit.

Sept. 4, 2002.

Mark N. Halbert, Phelps Dunbar, LLP, of Tupelo, MI, argued for plaintiff-appellant. With him on the brief was William M. Beasley.

Gerald M. Alexander, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Assistant Director.

Before MAYER, Chief Judge, RADER and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Adnan Awad brought suit against the United States in the United States District Court for the Northern District of Mississippi. In his suit, Mr. Awad asserted various causes of action and sought to recover from the United States in excess of $10,000. Following a bench trial, the district court concluded that all of the claims remaining in Mr. Awad's suit arose out of one or both of two alleged contracts with the United States. It therefore held that exclusive jurisdiction lay in the United States Court of Federal Claims pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491. Accordingly, the court ordered the case transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. *Awad v. United States,* 2001 WL 741638, *8 (N.D.Miss.2001). Mr. Awad now appeals the order of transfer. We affirm.

## BACKGROUND

### I.

The facts relevant to the issue before us are not in dispute. Mr. Awad's dealings with the United States government began in 1982, when he notified the U.S. Embassy in Switzerland of a bombing plot by the May 15 Organization, a radical Iraqi-based terrorist group. Mr. Awad's association with the May 15 Organization led the Department of Justice to seek his testimony in the planned prosecution of Mohammed Rashid, the leader of the May 15 Organization, who was believed to have been responsible for the bombing of a Pan American World Airways ("Pan Am") flight in 1982.

Mr. Awad was approached by Daniel Bent, the U.S. Attorney for the District of Hawaii, and Larry Lippe, an attorney with the Department of Justice. Mr. Bent and Mr. Lippe told Mr. Awad that, in return for his testimony against Rashid, he would receive U.S. citizenship and a U.S. passport. Mr. Awad agreed to cooperate with the government, and was brought to the United States in December of 1984. Upon his arrival in the United States, Mr. Awad entered the U.S. Marshals Service's Witness Security Program ("WITSEC"). In the course of his enrollment in WITSEC, Mr. Awad signed a Memorandum of Understanding which outlined the details of the WITSEC program and the obligations of both Mr. Awad and the Marshals Service. The Memorandum of Understanding provided that Mr. Awad was to surrender all identification to the Marshals Service for safekeeping and that in return he would be given new identification documents. The Memorandum of Understanding stated in relevant part as follows:

> The witness acknowledges that it is necessary to place in safekeeping with the Marshals Service all identification documents (driver's license, credit cards, etc.) that reveal his/her true identity for reasons of security. The Marshals Service agrees to retain these documents indefinitely, and will return the documents to the witness should he/she desire to revert to his/her true identity.

In keeping with the Memorandum of Understanding, Mr. Awad turned over his Swiss/Lebanese Passport to the Marshals Service. Mr. Awad stayed in the WITSEC program until May of 1986, when he voluntarily withdrew. At that time, he unsuccessfully requested the return of his passport.

In 1986, Mr. Awad testified before a federal grand jury investigating Mohammed Rashid's role, and that of the May 15 organization, in the Pan Am flight bombing. In addition, in 1991 and 1993, Mr. Awad traveled to Greece and testified against Rashid in criminal proceedings there.

Meanwhile, Mr. Awad engaged in efforts to obtain U.S. citizenship or, in the alternative, to retrieve his Swiss/Lebanese passport. Shortly after receiving Mr. Awad's grand jury testimony, Mr. Bent took Mr. Awad to the Boston office of the Immigration and Naturalization Services ("INS") and assisted him in completing paperwork for political asylum, having explained to Mr. Awad that he had to receive political asylum as a prerequisite to citizenship. Mr. Awad was granted political asylum in April of 1988. At that time, he received a Refugee Travel Document but not a passport. Eventually, in 2000, largely through his own efforts, Mr. Awad received U.S. citizenship and a U.S. passport. His Swiss/Lebanese passport never was returned to him.

## II.

Mr. Awad eventually brought suit in the Northern District of Mississippi, asserting against the United States various causes of action.[1] In his amended complaint, filed in May of 1994, Mr. Awad alleged false imprisonment, conspiracy, intentional infliction of emotional distress, bad faith breach of contract, invasion of privacy, negligence, trespass to chattels, and conversion. *See Awad*, 2001 WL 741638 at *1. Mr. Awad stated in his amended complaint that his causes of action arose "under the First, Fourth, Fifth, Eighth and Ninth Amendments to the Constitution of the United States, 28 U.S.C. Section 1331, 28 U.S.C. 1346, *et seq.* [,] 42 U.S.C. Section 1988, the

Tucker Act, and other laws and treaties of the United States."[2] Am. Compl. at ¶ 4, *Awad*, 2001 WL 741638 (No. 1:93cv376–D–D). Mr. Awad based his Tucker Act claims, *see* 28 U.S.C. § 1346(a)(2), upon his oral agreement with Mr. Bent and Mr. Lippe (the "Bent/Lippe agreement"), Am. Compl. at ¶¶ 11 and 19, the Memorandum of Understanding, *Id.* at ¶ 19, and representations that he alleged were made to him by various government agents and representatives, *Id.* at ¶¶ 11,12, 21, 23, and 29. Mr. Awad stated in his amended complaint that he was seeking to recover $5 million in compensatory damages and $10 million in punitive damages. Am. Compl., Demand for Judgment.

Following a bench trial, the district court held that it lacked subject matter jurisdiction over Mr. Awad's claims. *Awad*, 2001 WL 741638 at *7. In the case of each of Mr. Awad's claims alleging a tort, the court determined that the cause of action was grounded in the existence of agreements made with the United States relating to Mr. Awad providing testimony and entering the WITSEC program. The court therefore concluded that the cause of action lay within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C § 1491(a)(1), since Mr. Awad was seeking to recover in excess of $10,000. *Id.* at **3–4.

The district court determined that Mr. Awad's claim for false imprisonment could not stand independently of a contractual

---

1. Lynn Awad, Mr. Awad's wife, originally was a co-plaintiff in the suit. She is no longer involved in the action. Certain individually-named defendants also are no longer parties to the action.

2. Section 1331 of Title 28 provides the district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1346(a)(2) of Title 28 confers upon the district

courts and upon the Court of Federal Claims jurisdiction over actions against the United States sounding in contract, where the amount sought in recovery does not exceed $10,000. Section 1346(b)(1) confers upon the district courts jurisdiction over claims against the United States sounding in tort. Section 1988 of Title 42 grants the district courts the authority to award certain remedies in cases involving civil rights.

claim, as the required element of "detention of the plaintiff" necessarily relied on the failure of the United States to fulfill its alleged contractual duty to supply Mr. Awad with citizenship and a passport. *Id.* at *4. Likewise, the court determined that Mr. Awad's claim for intentional infliction of emotional distress was "inextricably intertwined with the government's supposed breach." *Id.* at *5. According to the district court, the "outrageous" government conduct necessary to support such a claim was dependent upon the government's breach of its alleged contractual obligations to Mr. Awad. *Id.* As to Mr. Awad's negligence claim, the court determined that the claim necessarily arose from the government's alleged breach of contract:

> Any duty the government had to provide Awad with United States citizenship or a passport sprang initially from the agreement Awad allegedly made with Bent and Lippe.... Likewise, any duty the government had to return Awad's Swiss/Lebanese passport sprang initially from the agreement Awad allegedly made with the United States Marshals Service.

*Id.* at *6.[3] Having concluded that it lacked jurisdiction, the district court transferred Mr. Awad's action to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. *Id.* at *7.

## DISCUSSION

### I.

■ The transfer statute provides that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631. We have jurisdiction to review the district court's transfer order under 28 U.S.C. § 1292(d)(4) (2000). Section 1292(d)(4) provides this court with "exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States ... granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title." 28 U.S.C. § 1292(d)(4)(A). Our review of the district court's decision to transfer is *de novo*. *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1087 (Fed.Cir.1999) ("We review a district court's decision to transfer a case to the Court of Federal Claims de novo because it is jurisdictional." (quoting *James v. Caldera*, 159 F.3d 573, 578 (Fed. Cir.1998))).

■ "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The United States has waived immunity from suit in two instances that are pertinent to this case. First, the Tucker Act waives sovereign immunity in all actions brought in the Court of Federal Claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). Jurisdiction over such claims lies in the Court of Federal Claims unless another court is expressly provided with jurisdiction by statute. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ("It is often assumed

---

**3.** The district court also dismissed, on similar grounds, Mr. Awad's claims for bad faith breach of contract, conspiracy, invasion of privacy, trespass to chattels, and conversion. Mr. Awad has not appealed the dismissal of those claims.

that the [Court of Federal Claims] has exclusive jurisdiction of Tucker Act claims for more than $10,000.... That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the [Court of Federal Claims]. Rather, that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the [Court of Federal Claims]").[4] Second, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), waives sovereign immunity as to claims arising in tort. The FTCA provides that district courts have jurisdiction in suits against the United States for claims

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

■ It is well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000. *See Wood v. United States*, 961 F.2d 195, 198 (Fed.Cir.1992) (upholding a transfer of the plaintiff's claims from the district court to the United States Claims Court on the ground that negligence and conversion claims could not establish a cause of action in tort independent of the underlying contractual relationship); *Blanchard v. St. Paul Fire and*

*Marine Ins. Co.*, 341 F.2d 351 (5th Cir. 1965) (holding that the plaintiff's claim against the United States for negligence was not a tort claim within the FTCA where it was founded upon an alleged failure to perform explicit or implicit contractual obligations); *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir.1963) (holding that a developer's claim for breach of fiduciary duty was actually a contract action properly brought in the Court of Claims). As we explained in *Wood:*

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to waive the breach and sue in tort brings the case within the Federal Tort Claims Act.

961 F.2d at 198 (quoting *Woodbury*, 313 F.2d at 295). Thus, the principal issue in this appeal is whether, as the district court determined, Mr. Awad's action sounds in contract, or whether Mr. Awad has stated an independent action in tort. On the basis of the amended complaint and the evidence adduced at trial, the district court held that Mr. Awad's action sounds in contract and therefore is properly within the jurisdiction of the Court of Federal Claims. For the reasons which follow, we agree.

## II.

Focusing upon his claims of false imprisonment, intentional infliction of emotional

---

**4.** As noted above, under 28 U.S.C. § 1346(a)(2), the Little Tucker Act, the district courts have concurrent jurisdiction with the Court of Federal Claims over Tucker Act actions in which the amount sought to be recovered does not exceed $10,000. In this case, there is no question that Mr. Awad seeks compensation in an amount greater than $10,000 and that therefore Little Tucker Act jurisdiction is inapplicable.

distress, and negligence, Mr. Awad argues that the district court failed to recognize that the facts presented at trial gave rise to several claims for damages in tort *independent* of the existence of a contract or its terms. He states in his brief, that his "tort claims for negligence, false imprisonment, and intentional infliction of emotional distress are completely independent from any contractual relationship which existed as a result of the promises made by [agents] Bent and Lippe and the [Memorandum of Understanding] executed by the [U.S. Marshals Service]."

■ In making his claim of false imprisonment, Mr. Awad asserts that he was unlawfully detained in the United States during the period when his Swiss/Lebanese passport was kept from him and he did not have U.S. citizenship. Mr. Awad acknowledges that his "detention" was based upon the government's failure to provide him with his citizenship and a passport, but argues that the duty to provide these documents arose not from a contract but from the fact that he was brought by the government to the United States in the first place. According to his brief, "because the government was responsible for bringing Awad to this country and leaving him without any citizenship status at all, the government was obligated to provide a means through which Awad could leave the country." The problem with this argument is that Mr. Awad is unable to point to any statutory or common law basis for a duty on the part of the government to provide him with U.S. citizenship and a passport. In fact, the sole source of any such duty was contractual, as the amended complaint makes clear. The amended complaint refers to the government having "promised to obtain citizenship for the plaintiff, return his personal papers and passports seized previously and to obtain an American Passport for

the plaintiff in exchange for the plaintiff's testimony and six months in the Federal Witness Protection Program." Am. Compl. ¶ 21. The amended complaint further alleges that the government "willfully and arrogantly in reckless disregard of the plaintiff's right to performance within a reasonable period of time breached said agreement." *Id.* To the same effect are paragraphs 23 and 29 of the amended complaint, in which Mr. Awad alleges that, in return for his cooperation, the government promised to obtain United States citizenship and a passport for him and to return to him his Swiss/Lebanese passport, as well as "personal papers." Mr. Awad has not stated an independent tort claim.

■ Mr. Awad's claim for intentional infliction of emotional distress also lacks a basis independent of his alleged contract with the government. Mr. Awad argues that the "*sine qua non* of this claim is not the existence of any alleged contract, but the existence of the government's duty to obtain citizenship and a passport for Awad." However, as just discussed, Mr. Awad has not pointed to any duty on the part of the government to obtain citizenship and a passport for him apart from the contractual obligations which allegedly arose from the Bent/Lippe agreement, the Memorandum of Understanding, and other promises that Mr. Awad claims were made to him. We thus must reject Mr. Awad's contention that his claim for intentional infliction of emotional distress has a basis independent of his contract claim.

■ Mr. Awad also argues that his negligence claim exists independently of his agreements with the United States. Specifically, he asserts that the government had an independent "duty of reasonable care" under Mississippi law to obtain citizenship and a passport for him as a result of Mr. Bent's initial voluntary undertaking of that task at the Boston INS

office. We disagree. Although Mr. Awad uses terminology appropriate for a tort claim, as the discussion above makes clear, the efforts undertaken to obtain citizenship and a passport for Mr. Awad grew out of alleged contractual obligations. As stated in *Wood*, "[i]f an action arises 'primarily from a contractual undertaking,' jurisdiction lies in the [Court of Federal Claims] 'regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.'" 961 F.2d at 198 (quoting *San Carlos Irrigation and Drainage District v. United States*, 877 F.2d 957, 960 (Fed.Cir.1989)). The district court did not err in concluding that Mr. Awad's claims sounded in contract and that therefore exclusive jurisdiction lay in the Court of Federal Claims because Mr. Awad was seeking to recover in excess of $10,000.

### III.

 As noted above, the transfer statute provides that a court may transfer an action to another court if the transferor court lacks jurisdiction to hear the action and the transferee court would have jurisdiction. In addition to arguing that jurisdiction in his case properly lies in the district court, Mr. Awad contends that transfer of his case to the Court of Federal Claims would not be proper because that court lacks jurisdiction. In making this argument, Mr. Awad points to *Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264 (Ct.Cl.1981). He argues that *Kania* limits Tucker Act jurisdiction to those contract claims in which the government's actions are those of a private contractor and not a sovereign state. According to Mr. Awad, the government's dealings with him in this case, assuming they were contractual, fell into the latter category.

*Kania* was a suit for breach of contract. Kania alleged that he entered into a contract with the United States, acting through the Office of the United States Attorney for the Southern District of New York ("U.S. Attorney's Office"). *Kania*, 650 F.2d at 266. According to Kania, the terms of the contract were that the U.S. Attorney's Office would not prosecute him for any of his actions as an officer of the Railway Express Agency ("REA") in return for his truthful testimony before the grand jury that was investigating allegations of criminal conduct at REA. *Id.* Kania alleged that he testified truthfully before the grand jury and that the U.S. Attorney's Office then breached the agreement by indicting him. As a result, Kania claimed, he incurred various costs and expenses, including legal fees, in successfully moving to have the indictment against him dismissed. He sought to recover those expenses in his suit in the Court of Claims. *Id.* at 267. The Court of Claims dismissed Kania's suit after it concluded that "if there was a compact or agreement between plaintiff and defendant, there was no contract sufficient to satisfy this court's jurisdictional requirements." *Id.* at 269. In reaching that conclusion, the court stated that "[t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Id.* at 268. The Court of Claims recognized, however, that a breach of the kind of agreement alleged by Kania could, under some circumstances, support a damages claim under the Tucker Act:

> [W]e would deem it possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. But, in such case, the court would look for specific authority in the [Assistant U.S.

Attorney] to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.

*Id.* In *Sanders v. United States,* 252 F.3d 1329 (Fed.Cir.2001), we interpreted this statement to mean that "a claim for money damages for the alleged breach of [a plea agreement, an immunity agreement, or a witness protection agreement] may not be maintained unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach." *Id.* at 1335.

We leave it to the Court of Federal Claims to decide in the first instance whether *Kania* precludes it from exercising Tucker Act jurisdiction over Mr. Awad's suit. Having determined that Mr. Awad's suit does sound in contract, we think that the best approach is to allow the Court of Federal Claims to determine whether the suit is the type of contract action over which it may exercise jurisdiction. That approach also will allow Mr. Awad to attempt to establish jurisdiction in the Court of Federal Claims based upon what he alleges are the facts of his case. *See Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.").

## CONCLUSION

For the reasons stated above, we agree with the district court's determination that Mr. Awad's claims arise out of alleged agreements with the United States and that therefore jurisdiction properly lies, if at all, under the Tucker Act as a contract action. The Court of Federal Claims will decide in the first instance whether Mr. Awad's suit represents a contract action over which it may assert jurisdiction. The district court's order transferring the action to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 is

*AFFIRMED.*