Terry Louis CARTER, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–284C.

United States Court of Federal Claims.

Sept. 10, 2004.

Terry Louis Carter, Columbus, GA, plaintiff, pro se.

Doris S. Finnerman, Washington, DC, with whom was Assistant Attorney General, Peter D. Keisler, for defendant. LCDR Holiday Hanna, Department of the Navy, Office of Judge Advocate General, Washington, DC, of counsel.

## *OPINION*

CHRISTINE O.C. MILLER, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). A retired Vietnam-era veteran of the United States Marine Corps seeks redress for an alleged wrongful discharge from active duty based on a faulty medical diagnosis. Argument is deemed unnecessary.

## FACTS

When ruling on a facial jurisdictional challenge brought under RCFC 12(b)(1), a court normally accepts as true the unchallenged facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). Further, "the court can consider ... evidentiary matters outside the pleadings." *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985). The following factual recitation therefore appropriately is drawn from plaintiff's complaint, including the attached exhibits, as well as the exhibits attached to plaintiff's opposition.

Terry Louis Carter ("plaintiff") voluntarily enlisted in the United States Marine Corps on August 29, 1974, with a guarantee to be trained in aviation. After graduating from basic training at San Diego, California, he was promoted to Private First Class (E–2) and sent to Camp Lejuene, North Carolina, for training in the Military Occupational Specialty 2531, Field Radio and Telecommunications. Upon arriving at Camp Lejuene, plaintiff became subject to racial animosity from his superiors, who assigned "blame to racial minority troops for the failure of the United States" in Vietnam. Compl. filed Mar. 3, 2004, ¶ 11. Plaintiff alleges that his superiors referred to him with racially-charged epithets and neglected him, along with other members of racial minorities, during the period of instructions. In retaliation for his inquiries regarding the neglect, his superiors revoked his guarantee of aviation training and reassigned and transferred him to an infantry unit within the 6th Regiment of the 2nd Division of the U.S. Marine Corps, located at Camp Lejuene, for field communications training.

Plaintiff thereafter continued to witness hostile racial discrimination in the form of, for example, his superiors prohibiting minority service members from congregating and walking together past sundown, as well as "the quietly permitted rampant and wholesale physical assaults and brutality plaintiff witnessed being perpetrated upon some minority service members without apparent lawful redress or remedy." Compl. ¶ 14. Plaintiff continued to complain about the conditions through the chain of command and by writing letters to Congress.

Allegedly in further retaliation, the military, after learning that plaintiff carried Sickle Cell Trait, "manipulated [him] into a hostile transfer" to Okinawa, Japan, "as a precursor to a planned prospective assault on plaintiff's person." Compl. ¶ 15. After reporting to his assigned unit in April 1976, plaintiff was subsequently transferred to Subic Bay Naval Base in the Republic of the Phillipines. The complaint thereafter recites a medical injury, allegedly caused by the travel requirements that placed him on a military air transport, which led to his medical evacuation to the National Naval Medical

Center in Bethesda, Maryland.[1] Absent from the complaint, however, is any explanation on what actually occurred that caused injury.

The court has found pertinent information in two medical reports by the Medical Board, the first dated February 28, 1977, which is attached to plaintiff's brief, and the second dated November 8, 1977, which is attached to the complaint. The February 28 report states that, on October 8, 1976, plaintiff "developed acute onsent of generalized abdominal pain while flying at 10,000 feet in an unpressurized aircraft. The pain progressed to total body pain and was accompanied by nausea, vomiting and loss of consciousness." After a series of transfers and medical tests, including an exploratory laparotomy performed on February 2, 1977, the February 28 report documents the medical findings and diagnoses of "sickle cell trait" and "splenic infarct," as well as the performance of a splenectomy.

According to the November 8 report, plaintiff then returned to active duty but continued to suffer from abdominal pain, "which severely limited his ability to perform his assigned duties." He was readmitted to the National Naval Medical Center where he underwent physical evaluation, psychiatric evaluation, and evaluation by both the Surgery Service and the Department of Anesthesiology. The November 8 medical report indicates that the results of these medical evaluations were unremarkable except for a recommendation for a procedure "for possible nerve block in the left upper quadrant as a therapy for his pain," a procedure that plaintiff refused. The report also notes a "final diagnosis" of "1. left upper quadrant pain, secondary to fibrosis from splenectomy[;] 2. Sickle Cell Trait. Recommendation: Unfit for duty. Referral to Physical Evaluation Board." Finally, the Medical Board concluded by "concur[ing] with the above diagnosis. It is the opinion of the Board that he is unfit for duty and it is recommended that

the patient be referred for appearance before the Physical Evaluation Board."

Effective February 17, 1978, plaintiff received a DD 214 effecting his separation from active duty. The form itself describes his character as "honorable" and his separation as "retired."

Plaintiff has been receiving disability benefits. It is not entirely clear what occurred during the ensuing years or what precipitated plaintiff's two 1997 requests for medical records under the Freedom of Information Act, as illustrated by exhibit E–2 to his complaint. In approximately 2000, over twenty years after his medical discharge, plaintiff sought further medical evaluation. Plaintiff alleges that at that time his physician diagnosed him with "clear herneation of splenic flexure into the chest . . . symptomatic left diaphragmatic hernia, probably traumatic (surgical) in origin[.]" Compl. Ex. D–1 (Medical Record Note dated Sept. 29, 2000).

On May 31, 2003, plaintiff received his medical records pursuant to his 1997 Freedom of Information Act requests, which, as he alleges, was the date he "first received medical evidence indicating the presence of medical fraud." Compl. ¶ 24.

Armed with this medical information, apparently indicating a misdiagnosis that led to his discharge, plaintiff filed suit in the Court of Federal Claims on March 3, 2004. He claims that the United States, through a pattern of discriminatory conduct, motivated by racial animus and acting in retaliation, issued a fraudulent and wrongful discharge. Plaintiff further claims that the military intentionally concealed records with the intent of prohibiting him from discovering the true cause of his physical suffering, that being a surgically-created hernia. Had the hernia been properly repaired, plaintiff alleges that he would have been able to return to full active duty. Plaintiff seeks an order ruling his retirement null and void, an injunction ordering the military to furnish the requisite medical care, a declaration that he was in-

1. Although it renders only slight assistance in understanding the complaint, plaintiff notes that "[d]efendant . . . effectively rendered plaintiff invisible, and deliberately placed plaintiff in harms way for great bodily injury and/or loss of life over

the South China Sea, without means of recourse." Pl.'s Br. filed June 1, 2004, at 9. Plaintiff also explains, in his briefing, that there was an "unlawful attempt upon plaintiff's life initiated over the South China Sea . . . ." Id.

jured as a result of the Marine Corps' discriminatory practices and that the Government is a hostile force, and an award of backpay.

## DISCUSSION

### 1. *Standard of review*

Defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under RCFC 12(b)(1), arguing that (1) the complaint sounds in tort and therefore fails to invoke this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), and (2) that plaintiff's claims are time-barred by operation of the applicable statute of limitations. RCFC 12(b)(1) enables a party to, by motion, challenge the sufficiency of the jurisdictional allegations in the complaint, although the court may do so *sua sponte*. *See Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998).

This court is mindful that plaintiff's status as a *pro se* litigant bears relevance upon the construction of his pleadings. The United States Supreme Court recognized in 1972 that pleadings of *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Courts have "strained our proper role in adversary proceedings to the limit, searching [the record] to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285, 1292 (1969). As *Ruderer* implies, *pro se* litigants chiefly enjoy these benefits upon defense to motions to dismiss for failure to state a claim upon which relief can be granted.

When ruling on motions to dismiss for lack of subject matter jurisdiction, however, a court's leniency is tempered by the exacting requirements of jurisdiction. *See Bernard v. United States,* 59 Fed.Cl. 497, 499 ("This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements."), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir. 2004). This is certainly the case when plaintiffs attempt to invoke the jurisdiction of the Court of Federal Claims, for the Tucker Act "both confers jurisdiction upon the Court of Federal Claims and waives the Government's sovereign immunity[.]" *Fisher v. United States,* 364 F.3d 1372, 1376 (Fed.Cir.2004). Consequently, the Tucker Act must be strictly construed in favor of the Government. *See Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); *Shoshone Indian Tribe v. United States,* 364 F.3d 1339, 1346 (Fed.Cir.2004). A party's failure or inability to procure counsel therefore does not alter who carries the burden nor how that burden is met.

Under RCFC 12(b)(1), this burden lies with the plaintiff seeking to invoke this court's jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324 (Fed.Cir. 1997). Plaintiff's jurisdictional showing must be well-pleaded in the complaint. *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997). While it is true that plaintiff's complaint need only contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," RCFC 8(a)(1), "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss[,]" *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bante v. Merit Sys. Protection Bd.,* 966 F.2d 647, 649 (Fed.Cir.1992).

When, under RCFC 12(b)(1), a party challenges the truth of the jurisdictional facts alleged in the complaint, fact-finding is proper. *See Ferreiro v. United States,* 350 F.3d 1318, 1324 (Fed.Cir.2003). In such situations, plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1383 (Fed.Cir.2002). When a defendant does not challenge the jurisdictional facts alleged in the complaint and instead makes a challenge to the face of the complaint, the court must accept all factual allegations as true and "must draw all reasonable inferences in the non-movant's favor." *Sumter v. United States,* 61 Fed.Cl. 517, 520

(2004); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995).

### 2. *Statute of limitations*

Defendant argues that this court lacks subject matter jurisdiction because plaintiff's claim is time-barred by 28 U.S.C. § 2501 (2002), which provides that "[e]very claim of which the United States Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." [2] Defendant argues that, in military discharge cases such as this one, accrual of the cause of action occurs upon discharge. Because plaintiff's discharge occurred on February 17, 1978, plaintiff's claim for wrongful discharge could only be brought within six years from that date, or by February 17, 1984. As this complaint was filed some twenty-six years after discharge, even plaintiff concedes that it is well outside the limitations period. Plaintiff's response is not that a straightforward application of section 2501 bars his lawsuit, but that sufficient bases for tolling or suspending the jurisdictional clock are present.[3]

### 3. *Equitable tolling*

■ The equitable tolling doctrine "gives courts some latitude in excusing the missing of filing deadlines[.]" *Jaquay v. Principi,* 304 F.3d 1276, 1283 (Fed.Cir.2002). It "may be applied to toll a statute of limitations 'where [1] the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or

where [2] the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' " *Andrews v. Principi,* 351 F.3d 1134, 1137 (Fed. Cir.2003) (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). While defendant represents that equitable tolling is limited to these two circumstances, defendant previously failed to persuade the Federal Circuit of such a narrow application: "[T]he government ... directs us to language indicating that such tolling is allowed in only two limited situations .... A careful study of Supreme Court precedent, as well as that of the regional circuits, however, reveals that equitable tolling is available in a variety of circumstances ...." *Barrett v. Principi,* 363 F.3d 1316, 1318 (Fed.Cir.2004) (holding that mental illness may justify equitable tolling of 120–day limitations period for appeal from decision by Board of Veterans' Appeals). Regardless, the doctrine is "sparingly" applied, and courts should not be "forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

While the Court of Appeals for the Federal Circuit has acknowledged that all federal statutes of limitations contain a rebuttable presumption of equitable tolling, *Barrett,* 363 F.3d at 1318 (citing *Irwin,* 498 U.S. at 89, 111 S.Ct. 453), it also expressly declined to rule on the applicability of the doctrine to the six year statute of limitations of 28 U.S.C. § 2501. *See Martinez v. United States,* 333 F.3d 1295, 1318 (Fed.Cir.2003).

Assuming, *arguendo,* that equitable tolling does apply, plaintiff could not avail himself of it, for he failed to act diligently in pursuing his claim. Plaintiff alleges that his superiors,

---

**2.** It is well established that this statute of limitations is itself a jurisdictional prerequisite. *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir. 1986) ("Compliance with the Claims Court's statute of limitations is jurisdictional."). Moreover, the time bar is a "condition of the waiver of sovereign immunity[,]" *Caguas Cent. Fed. Savings Bank v. United States,* 215 F.3d 1304, 1310 (Fed. Cir.2000), and the jurisdiction of this court is strictly limited to " 'the extent to which the United States has waived its sovereign immunity.' " *Inter–Coastal Xpress, Inc. v. United States,* 296 F.3d 1357, 1365–66 (Fed.Cir.2002) (quoting

*Myers v. United States,* 50 Fed. Cl. 674, 682 (2001)). *Cf. Venture Coal Sales Co. v. United States,* 370 F.3d 1102, 1105 n. 2 (Fed.Cir.2004) (suggesting that jurisdictional aspect of six-year statute of limitations derives from waiver of sovereign immunity).

**3.** Plaintiff also argues that the statute of limitations should be tolled due to a legal disability— namely, that he "has been in a missing status since April 1975[.]" *See* Pl.'s Br. filed June 1, 2004, at 23. This court rejects this argument.

the Secretary of the Navy, and the medical board, and all medical personnel from the field to the Navy Medical Hospital, and presumably other personnel who continuously refused to properly treat him after his 1977 discharge were motivated by racial animosity and that, in retaliation to his complaints, all schemed to defraud him out of active duty. Diligence would have required plaintiff to pursue recourse upon his discharge. That may have included further inquiry into his medical condition, as he had ample reason to suspect a fraudulent discharge from all the "retaliatory" acts that led to his discharge. Even plaintiff admits that the actual alleged medical mis-diagnosis, which he did not specifically learn of until over twenty years later, is not relevant: "[W]hether [he] had reason to believe 'medical malpractice' occurred in connection with his *medical treatment* prior to his discharge is irrelevant ...." Pl.'s Br. filed June 1, 2004, at 18. Equity therefore would not toll the statute even if equitable tolling were applicable.

### 4. *"Accrual suspension rule"*

■ Plaintiff seeks to avoid dismissal by invoking the "accrual suspension rule." It is well settled that, where a complainant seeks back pay for a wrongful military discharge, the cause of action accrues on the date of discharge. *Martinez*, 333 F.3d at 1303. Under the accrual suspension rule, "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Id.* Plaintiff argues that he had no way of knowing that his claim existed until the date at which he learned that medical malpractice occurred.

■ Plaintiff's claim does not hinge on whether medical malpractice occurred, which is incidental to his discharge insofar as he should have known that the—claim existed. Just as diligence would have required him to pursue recourse upon discharge—apply to a military corrections board for review of his diagnosis—he was aware of facts to charge him with notice that his claim existed at the

time of discharge. To the extent plaintiff's claims are truly based on the mis-diagnosis and not any fraud, then the Supreme Court's refusal to toll the two-year statute of limitations under the Federal Tort Claims Act ("FTCA") until such time as the plaintiff learns of the mis-diagnosis is instructive:

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.... If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*United States v. Kubrick*, 444 U.S. 111, 123–24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

Plaintiff discovered the relevant facts when he was discharged, having reason to suspect the military of improper motives and continuing to suffer pain. The court cannot extend the Government's waiver of its sovereign immunity indefinitely—over twenty years in this case—until such time as plaintiff learned of the alleged mis-diagnosis.[4]

### 5. *Claim sounding in tort*

Defendant also argues that jurisdiction lacks because the claim sounds in tort. The Tucker Act jurisdictional grant does not extend to complaints "sounding in tort." *See Alves v. United States*, 133 F.3d 1454, 1459 (Fed.Cir.1998) ("To the extent that [plaintiff's] allegations sound in tort, the Court of

---

4. Were the court to construe this complaint as one not seeking relief from fraudulent discharge, but seeking correction of the disability rating, it still would be time-barred for the same reasons that preclude tolling or accrual suspension of his claim for wrongful discharge.

Federal Claims lacks jurisdiction under the Tucker Act to determine this question[.]"); *New Am. Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act[.]"). As much was recognized by the Supreme Court as early as 1868: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States,* 8 Wall. 269, 75 U.S. 269, 19 L.Ed. 453 (1868).

Claims sounding in tort must be brought before the federal district courts pursuant to the vesting of exclusive jurisdiction by the FTCA, 28 U.S.C. § 1346(b) (2000). *See Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act[.]"); *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.1998) (table), *cert. denied,* 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998). When determining whether a claim sounds in tort, the focus is on the alleged misconduct— *i.e.,* whether the Government's alleged misconduct is "tortious." *See New Am. Shipbuilders, Inc.,* 871 F.2d at 1079.

Defendant attempts to characterize plaintiff's claim as, in essence, a medical malpractice action, and thus an action sounding in tort. According to defendant, the gravamen of the complaint is that the military's misdiagnosis resulted in damages, including plaintiff's acceptance of retirement due to unfitness for duty. The alleged misconduct is the mis-diagnosis.[5]

Plaintiff proffers a construction of his complaint as one alleging conduct violating statutory procedural requirements. He cites violations of 10 U.S.C. § 1201, the military's statutory authority in discharging him for unfitness for duty due to physical disability,

which, as it existed at the time of retirement in 1977, provided, in part:

> Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay ... is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member ... if the Secretary also determines that—(1) based upon accepted medical principles, the disability is of a permanent nature ....

10 U.S.C. § 1201 (1976).

Defendant does not discuss a recent Federal Circuit case that addresses this issue. *Fisher v. United States,* 364 F.3d 1372 (Fed. Cir.2004), is the Federal Circuit's most recent interpretation of military pay case law. A physician serving with the United States Air Force suffered from "'persistent left shoulder pain.'" *Id.* at 1374 (quoting record). He was diagnosed with rheumatoid arthritis, causing him to receive medical evaluation by three Medical Evaluation Boards ("MEBs"). The Secretary of the Air Force, acting through the MEBs, found plaintiff fit for service. Apparently motivated by the determination of the Department of Veterans Affairs that he was entitled to disability compensation, Dr. Fisher filed an action in the Court of Federal Claims seeking a correction of his record to show a medical disability discharge based on rheumatoid arthritis.

The Federal Circuit ruled that jurisdiction was present:

> Dr. Fisher contends that the Secretary's determination that he was fit for duty was arbitrary and capricious and contrary to law. He wants the money that would have been his due had he been discharged in the manner to which he claims he was entitled, and he wants the necessary steps taken to position himself for that result—i.e., reinstatement, etc. That is a classic Tucker

---

5. Although defendant ignores the claim of fraud in the complaint, the distinction between fraud and negligence is not pertinent to this analysis, for fraud is, itself, a tort. *See Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) ("Because [plaintiffs'] complaints for 'fraudulent as-

sessments' are grounded upon fraud, which is a tort, the court lacks jurisdiction over these claims."); *L'Enfant Plaza Props., Inc. v. United States,* 227 Ct.Cl. 1, 10–11, 645 F.2d 886, 891–92 (1981).

 

Act suit for money and the related remedies the trial court is authorized to grant. *Id.* at 1379–80. In other words, a plaintiff who alleges that the Secretary's determinations on fitness for duty are arbitrary and capricious and contrary to law properly invokes the jurisdiction of the Court of Federal Claims.

Applying *Fisher* to this case, it would appear that plaintiff sufficiently invokes this court's jurisdiction. Plaintiff has alleged that the Secretary's determinations were contrary to law. That he alleges that medical malpractice was one of the means used by the Secretary to bring about his wrongful discharge does not appear materially to distinguish his case from the breadth of *Fisher's* holding.

*Fisher* may have implications for the future of the military pay cases. Without it, defendant would have established that plaintiff's complaint sounds in tort, as the Claims Court so held on similar facts. *Hawley v. United States,* 12 Cl.Ct. 563, 566–67 (1987). In *Hawley,* a case not cited by defendant-understandably so, as it is not precedential-a United States Air Force Staff Sergeant tested positive for cannabinoid during a mandatory urinalysis test and received an honorable but involuntary discharge pursuant to Air Force Manual. He later learned that the urinalysis test was void due to improper procedure. Plaintiff filed a suit for wrongful discharge. The court found that the alleged misconduct—the use of defective testing procedures—was tortious in nature and thus not within Tucker Act jurisdiction.

Applying *Fisher,* the court would not be able to dismiss this complaint on grounds that it states a tort at this early stage in litigation. However, because the statute of limitations bars plaintiff's claim, no ruling is made as to whether his claim sounds in tort.

### CONCLUSION

Plaintiff's complaint fails to establish this court's subject matter jurisdiction, as his claim is time-barred by 28 U.S.C. § 2501.[6] Accordingly, based on the foregoing,

1. Plaintiff's motion for judicial notice and plaintiff's motion for preliminary injunction are denied.

2. Defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for want of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

6. The court notes concerns as to justiciability and exhaustion of his administrative remedies.

As defendant did not raise these arguments, the court does not address them.