# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 11, 2012

No. 11–30177

Lyle W. Cayce
Clerk

UNITED STATES MARINE, INCORPORATED,

> Plaintiff – Appellee Cross-Appellant

v.

UNITED STATES OF AMERICA,

> Defendant-Third Party Plaintiff – Appellant Cross-Appellee

v.

VT HALTER MARINE, INCORPORATED,

> Third Party Defendant – Appellee Cross-Appellant

---

Appeals from the United States District Court
for the Eastern District of Louisiana
(08-CV-2571)

---

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal involves the United States Navy's allegedly wrongful disclosure of the Mark V special operations craft designs to competitors of the designs' co-owners: United States Marine, Inc. (USMI) and VT Halter Marine,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11–30177

Inc. (VT Halter). USMI brought a claim and VT Halter brought a counterclaim against the Navy,[1] each for the tort of misappropriation of trade secrets. The district court found the Navy liable and awarded USMI and VT Halter $1.46 million in damages. However, because we find that both USMI's claim and VT Halter's counterclaim sound in contract and not in tort, they are within the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). Accordingly, because it lacked jurisdiction to hear either claim, we vacate the orders of the district court and remand with instructions that the case be transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

## I.

USMI and VT Halter worked together in 1993 to develop the designs for the Mark V special operations craft.[2] Over the next few years, VT Halter built and sold twenty-four Mark V crafts to the Navy pursuant to several contracts to which VT Halter and the Navy (but not USMI) were each a party. VT Halter also gave copies of the Mark V designs to the Navy. Each of the contracts and designs contained "limited rights" provisions or legends indicating that the Navy could not use the designs for future manufacturing or disclose them to other parties without written permission.

Several years later, the Navy contracted with several of USMI's and VT Halter's competitors to design and build the Mark V.1, the next generation special operations craft (nicknamed the "Mako"). The Navy's goal was to make the Mako as similar as possible to the Mark V except for minor changes to the

---

[1] For simplicity, we identify each of the relevant government entities simply as "the Navy." This includes the Navy's Special Operations Command and the Navy's Office of Naval Research, each of which are referred to in the parties' briefs and the district court's various memoranda and orders.

[2] The Mark V is a high speed military special operations craft the Navy uses to transport, insert, and extract special forces personnel.

No. 11–30177

hull design intended to improve the craft's ride and handling. Notwithstanding the "limited rights" provisions and legends, the Navy disclosed many of the Mark V designs to USMI's and VT Halter's competitors during the design and construction of the Mako .

When USMI discovered that the Navy had disclosed the Mark V designs to its competitors, it brought a claim in district court for misappropriation of trade secrets pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, and Virginia's Uniform Trade Secrets Act, VA. CODE ANN. § 59.1–336 (2009). And after being joined by the Navy as a third-party defendant, VT Halter brought a counterclaim also alleging misappropriation of trade secrets. At the outset, the Navy moved to dismiss USMI's claim for lack of subject matter jurisdiction pursuant to the Tucker Act, and later moved to dismiss VT Halter's counterclaim on similar grounds. After denying both motions to dismiss, the district court conducted a bench trial and ultimately found in USMI and VT Halter's favor. The Navy appealed, challenging both the district court's jurisdiction over VT Halter's counterclaim and the damages award. USMI and VT Halter cross-appealed, also challenging the damages award.

## II.

## A.

The Navy (as part of the federal government) may only be sued to the extent Congress waives its sovereign immunity. *Davis v. United States*, 961 F.2d 53, 56 (5th Cir. 1991). The FTCA waives the Navy's sovereign immunity for the tort of misappropriation of trade secrets and vests subject matter jurisdiction in the district courts. *See* § 1346(b); *Kramer v. Sec'y, U.S. Dep't of the Army*, 653 F.2d 726, 729 (2d Cir. 1980). It also makes the Navy "liable to the claimant in accordance with the law of the place where the act or omission occurred," § 1346(b), which in this case is Virginia. The FTCA does not, however, extend the district courts' subject matter jurisdiction to claims sounding in contract. *See*

3

No. 11–30177

*Davis*, 961 F.2d at 56. Instead, the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over any claim that exceeds $10,000 and is founded upon an express or implied contract with the Navy. § 1491(a); *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995). The Navy asserts that VT Halter's counterclaim is styled as a tort but actually stems from the Navy's breach of a contractual duty and, therefore, is a contract claim not properly before the district court. We review this jurisdictional issue de novo. *See Davis*, 961 F.2d at 56.

## B.

The Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over "any claim against [the Navy] founded . . . upon . . . any express or implied contract with the [Navy]." § 1491(a)(1).

The first time a court squarely addressed what claims are "founded upon" a federal contract was in *Woodbury v. United States*, where the Ninth Circuit held that when "the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act." 313 F.2d 291, 296 (9th Cir. 1963). The *Woodbury* court distinguished between claims where a breach of contract is "mere background for the tort," and those where it is the "essential basis" for the claim. *Id.* It warned of the negative effect of permitting plaintiffs to "fashion a 'tort'" out of the federal government's breach of a contract, and it ultimately held that the Tucker Act applies "even though the breach could also be said to be tortious." *Id.*

Following *Woodbury*, the case law distinguishing between FTCA and Tucker Act jurisdiction has focused carefully on the precise relationship between the federal government's potential liability and the duties imposed on it by the relevant contract(s). Where "contractual relations exist, the fact that the alleged

No. 11–30177

breach is also tortious does not foreclose Tucker Act jurisdiction." *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) (quotation omitted).

Generally, when the government's liability arises directly from its breach of a contractual duty, the claim sounds in contract, not tort, for purposes of Tucker Act jurisdiction. *See Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002) (noting that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract" if there is no basis for liability independent of the contract's terms); *Wood*, 961 F.2d at198 (finding the "primary thrust" of the claim was breach of contract where liability depended wholly upon the government's alleged promise); *Davis*, 961 F.2d at 56–57 (finding the claim was "predicated upon" or "based on" the breach of a contractual provision); *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351, 357 (5th Cir. 1965) (finding the claim was "grounded essentially in contract").

Our approach is consistent with the majority of courts which interpret the "founded upon" language broadly and focus on whether liability arises from the breach of a contractual promise. *See Davis*, 961 F.2d at 56–57; *Blanchard*, 341 F.2d at 357. While VT Halter's counterclaim uses tort terminology, its injury stems directly from the Navy's alleged breach of a duty not to use or disclose the Mark V designs without permission—a duty which stems directly from the "limited rights" provisions found in the VT Halter–Navy contracts. As the *Wood* court explained:

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act.

5

No. 11–30177

961 F.2d at 198 (quoting *Woodbury*, 313 F.2d at 295). It is uncontested that the Navy's disclosure of the Mark V designs may qualify as a breach of its contractual promise; whether such breach could also qualify as a tortious act under Virginia law is rendered irrelevant by the Tucker Act.

Moreover, we must "give due weight to the strong policy in favor of construing federal contracts under uniform federal law." *Union Pac. R.R. Co. v. United States*, 591 F.3d 1311, 1320 (10th Cir. 2010). Through the Tucker Act, Congress gave the Navy the right to have its contractual rights and duties determined pursuant to federal contract law by the Court of Federal Claims alone and shielded the Navy from potential tort liability under fifty overlapping state statutes for breach of those same duties. Congress did not give VT Halter the right to waive the Navy's possible breach of a contractual duty and then, based on the same allegedly wrongful actions, sue for the Navy's breach of an identical (or nearly identical) tort duty.

In its consideration of VT Halter's counterclaim, the district court was required to interpret the "limited rights" provisions of the VT Halter–Navy contracts in order to determine the Navy's rights and duties with respect to using and disclosing the Mark V designs. Any claims stemming from the alleged breach of such provisions clearly sound in contract. If they did not, the Navy would potentially be subjected to differing interpretations of its "limited rights" under the tort laws of fifty states, the precise situation Congress sought to avoid. Accordingly, the Tucker Act deprived the district court of jurisdiction over VT Halter's counterclaim and placed it squarely within the exclusive jurisdiction of the Court of Federal Claims.

## C.

The question remains whether the district court properly considered VT Halter's counterclaim pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367. We hold that it did not. In *Wilkerson*, we stated that we have

6

No. 11–30177

"consistently refused to allow district courts to adjudicate issues which belong solely to the Court of [Federal] Claims, even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case." 67 F.3d at 118 (citing *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir. 1987)). VT Halter's counterclaim is styled as a tort but sounds in contract and, therefore, is under the jurisdiction of the Court of Federal Claims to the exclusion of any other court under any other jurisdictional statute, including § 1367. *Id.*

## III.

The parties disputed below but do not dispute on appeal whether the district court has jurisdiction over USMI's claim for misappropriation of trade secrets. However, we have a duty to examine *sua sponte* the jurisdictional basis for all claims brought before us. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). Our above discussion with respect to VT Halter's tort-styled counterclaim is also applicable to USMI's claim for misappropriation of trade secrets; if it is "founded . . . upon . . . any express or implied contract with the [Navy]," it is not within the district court's jurisdiction. § 1491(a)(1).

We find that USMI's claim is also founded upon the VT Halter–Navy contracts and is therefore within the exclusive jurisdiction of the Court of Federal Claims. Like VT Halter's counterclaim, the "limited rights" provisions of the contracts provide the essential basis for USMI's claim. We can find no basis for the Navy's potential liability independent of those terms and the duties of non-disclosure they placed upon the Navy. In fact, the Navy's liability and USMI's recovery are completely dependent upon evidence showing (i) how and when the Navy received the Mark V designs, and (ii) what rights and duties the Navy had with respect to using and disclosing the designs to other parties—evidence that can only come from producing the VT Halter–Navy contracts and interpreting their terms. The Tucker Act explicitly forbids such

7

interpretation of federal contracts by the district courts, and there is no potential liability in this case without it.

The fact that USMI was never party to the VT Halter–Navy contracts does not change our analysis. A claim can still be founded upon the government's alleged breach of a contractual provision even if the claimant is not party to the contract. In *United States v. Smith*, we relied on Tucker Act precedent to hold that tort claims brought against the government by six subcontractors sounded in contract even though the subcontractors were not parties to the prime contract between the government and the general contractor. 324 F.2d 622, 625 (5th Cir. 1963). We found that the subcontractors' claims were "based entirely upon breach by the government of a promise made by it in a contract," and that the "long established policy that government contracts are to be given a uniform interpretation and application under federal law, rather than being given different interpretations and applications depending upon the vagaries of the laws of fifty different states" supported that finding. *Id.* (quoting *Woodbury*, 313 F.2d at 295). The same contractual basis for the Navy's potential liability and the same policy reasons are also present here where USMI was a subcontractor to VT Halter with respect to the VT Halter–Navy contracts.[3]

Because USMI must establish and rely upon the terms of the VT Halter–Navy contracts to make its case, we find that its claim—like VT Halter's counterclaim—sounds in contract, not tort, for purposes of the Tucker Act. As

---

[3] We acknowledge the concerns raised by the dissent as to USMI's ability to recover damages following the transfer of its claim to the Court of Federal Claims. However, we continue to believe that the Court of Federal Claims is the correct court to consider the question of whether USMI may qualify as an implied third-party beneficiary capable of enforcing the "limited rights" provisions. *See, e.g.*, *D & H Distrib. Co. v. United States*, 102 F.3d 542, 545–48 (Fed. Cir. 1997). Regardless of the Court of Federal Claims' resolution of that question, we remain confident that Congress did not waive the Navy's sovereign immunity for tort-styled claims such as USMI's—a claim where the Navy's liability depends completely on the existence and terms of its various contracts concerning the Mark V.

No. 11–30177

such, the district court improperly exercised jurisdiction over USMI's claim against the Navy.

## IV.

For the foregoing reasons we VACATE the district court's orders with respect to USMI's claim and VT Halter's counterclaim and REMAND with instructions that the case be transferred to the Court of Federal Claims. We believe the interests of justice would be best served by transferring the claims to the court of proper jurisdiction so that all claims can be resolved in the same proceeding and any future disputes as to the distribution of damages (if any) can be avoided. *See* § 1631. We offer no opinion regarding the Navy's potential liability for wrongful disclosure and USMI's and VT Halter's claims for damages under the contracts.

No. 11–30177

JENNIFER WALKER ELROD, Circuit Judge, dissenting in part:

None of the parties argue that the claim of the non-contracting party United States Marine, Inc. (USMI) should be sent to the Court of Federal Claims. In fact, the government at oral argument agreed that USMI's claim does not belong in the Court of Federal Claims, only appealing the district court's jurisdiction over VT Halter.[1] Because I would hold that the district court lacked jurisdiction over VT Halter's claim but affirm its jurisdiction over USMI's claim, I respectfully dissent in part.

Contrary to the majority opinion's assertion, USMI's claim as a non-contracting party does not sound in contract. *See* 28 U.S.C. § 1491(a)(1) (establishing jurisdiction in the Court of Federal Claims for "any claim against [the Navy] founded . . . upon . . . any express or implied contract with the [Navy]"). In *Johnson v. Sawyer*, this court noted *en banc*—while deciding whether a suit sounded in contract or tort—that the plaintiff had no privity with the IRS and "[w]ithout privity there can be no breach of contract." 47 F.3d 716, 726 n.22 (5th Cir. 1995) (en banc). The Federal Circuit applies the same rule under the Tucker Act.[2] *See Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) (holding that the lack of privity between plaintiff and the government "means the Tucker Act is not applicable and cannot forbid the requested relief, either

---

[1] COURT: So it wouldn't achieve anything by bundling everything and sending it to the Court of Claims?

GOVERNMENT: Not with respect to the claims of U.S. Marine. It would achieve the dismissal of VT Halter's claims under the Federal [Tort] Claims Act. And that's what we are asking for here.

COURT: What do you do with the other claims?

GOVERNMENT: Well, we're saying you should dismiss those claims on grounds for failure to prove damages, and thus avoid the whole problem. *Because, unfortunately, because they are not a contracting [party] they cannot proceed [in the Court of Federal Claims]. We agree with that.*

[2] The Federal Circuit has exclusive jurisdiction of appeals from the Court of Federal Claims. 28 U.S.C. § 1295(a)(3).

No. 11–30177

expressly or impliedly"); *see also Brighton Vill. Assocs. v. United States*, 52 F.3d 1056, 1059 (Fed. Cir. 1995) ("*Katz* differs from this case in a very important way. . . . Absent privity, *Katz* did not feature a contract claim against the Government."). The Court of Federal Claims also looks to privity between a plaintiff and the government when determining the boundaries of its jurisdiction under the Tucker Act. *See Kanarek v. United States*, 314 F.2d 802, 803 (Ct. Cl. 1963) (holding that the breach of contract claim brought by the employee of a government contractor sounded in tort as the plaintiff lacked privity with the government and was not a third-party beneficiary). Therefore, it is an odd result for us to conclude that USMI's claim falls under the Court of Federal Claims's exclusive jurisdiction, when that court would likely determine that USMI's lack of a contract with the Navy renders its claim a tort outside of the court's jurisdiction.[3] *See id.*

The majority opinion relies on a single authority for the contrary proposition that we should treat a non-contracting party like USMI the same as a contracting party like VT Halter. *See United States v. Smith*, 324 F.2d 622, 625 (5th Cir. 1963). *Smith* was not a Tucker Act case. Moreover, despite the majority opinion's description, *Smith* did not hold that the subcontractors' claims "sounded in contract," and did not even mention, much less rely on, the lack of privity between the plaintiffs and the government.[4] Thus, *Smith* gives no guidance as to how this court should handle the question at issue here.

For the foregoing reasons, I respectfully dissent in part.

---

[3] Privity between the plaintiff and the government is "of course, the sine qua non of jurisdiction in the Court of Federal Claims. Absent privity between [the plaintiff] and the government, there is no case." *Katz*, 16 F.3d at 1210. This is consistent with the views expressed by each party at oral argument that USMI would lack standing to pursue its lawsuit in the Court of Federal Claims.

[4] Indeed, the majority opinion proclaims that the *Smith* court "found" that the claims before it were based entirely on a breach of a contractual promise. We found no such thing; in fact, there was no contractual promise at all in *Smith*. The only mention of a contractual promise was in a block quotation from a loosely analogous Ninth Circuit case, which the majority opinion takes out of context to become this court's findings in *Smith*.

No. 11–30177