# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES MARINE, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant/Third Party Plaintiff-Appellee,*

v.

**VT HALTER MARINE, INC.,**
*Third Party Defendant/Counterclaimant.*

---

2012-1678

---

Appeal from the United States District Court for the Eastern District of Louisiana in No. 08-CV-2571, Judge Carl J. Barbier.

---

Decided: July 15, 2013

---

CHARLES L. EGAN, Slater & Zeien, L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief were MARCUS B. SLATER, JR. and JENNIFER J. ZEIEN.

DOMENIQUE G. KIRCHNER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant/third party plaintiff-appellee. With her on

the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director.

---

Before LOURIE, PLAGER, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

United States Marine, Inc. (USM) sued the United States in the United States District Court for the Eastern District of Louisiana under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674. USM alleged that the United States misappropriated USM's trade secrets. Specifically, USM claimed that the United States Navy, which had lawfully obtained USM's proprietary technical drawings under a contract (to which USM was not a party), owed USM a duty of secrecy that it breached by disclosing those drawings to a rival private firm for use in designing military boats for the government.

After the district court found the United States liable for trade-secret misappropriation and awarded USM damages, the United States Court of Appeals for the Fifth Circuit held that the district court lacked jurisdiction over USM's claims under the FTCA. The Fifth Circuit reasoned that (a) the Navy's liability and USM's recovery depended on the interpretation of a federal-government contract and (b) therefore the matter lay exclusively within the jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). The Fifth Circuit vacated the district court's judgment and remanded for transfer of the case to the Claims Court under 28 U.S.C. § 1631. We review the district court's subsequent transfer order under 28 U.S.C. § 1292(d)(4)(A).

Given the decision of the transfer question in this case by the Fifth Circuit, we do not decide the question afresh. We ask only whether the Fifth Circuit decision was clearly in error. Unable to say that it was, we affirm.

BACKGROUND

USM is a Louisiana corporation that builds military boats. Sometime before mid-1993, working with VT Halter Marine, Inc., which was a subsidiary of Trinity Marine Group and also a shipbuilder, USM developed a design for a special-operations craft with a hull made out of composite materials. The companies developed the design—now called the "Mark V," a name covering several versions—for VT Halter to use in competing for the "MK V Special Operations Craft and Transporter System Contract" with the United States Navy. Before VT Halter submitted a bid to the Navy, USM and VT Halter built a prototype of the special-operations craft, an operational "parent craft" that they could modify to meet the Navy's requirements if VT Halter secured the contract. The district court in this case found that the design and development of the craft did not rely on government funds. VT Halter also designed a version of the craft with an aluminum hull. Although the working relationship between USM and VT Halter initially was informal, a letter from Trinity Marine Group to USM in 1995 stated that the companies shared ownership of the Mark V design, which was confirmed in a later agreement reached after corporate changes, bankruptcy, and other proceedings.

As part of its bid for two development contracts with the Navy in 1993, VT Halter submitted technical drawings of both the aluminum and composite versions of the Mark V design. VT Halter stamped the drawings with a "Limited Rights Legend" that invoked a specific provision of the Defense Federal Acquisition Regulations Supplement (DFARS), namely, Section 252.227-7013(a)(15), which states limitations on the government's use and outside disclosure of certain information. VT Halter's proposal also stated that, if it were awarded the contracts, any design data would be furnished subject to restrictions on the government's use and disclosure as provided for in the contracts.

On August 6, 1993, the Navy, through its Special Operations Command, awarded VT Halter two contracts to develop prototypes of (respectively) the aluminum- and composite-hull crafts. The development contracts incorporated by reference all of DFARS § 252.227-7013, which addresses "[r]ights in technical data and computer software." As required, VT Halter marked its submitted design drawings and technical data with a Limited Rights Legend as prescribed by the DFARS provision.

On November 30, 1994, after testing and evaluation of the prototypes, the Navy selected the Mark V aluminum-hull craft for actual construction and awarded VT Halter a production contract. VT Halter again submitted design drawings marked with the legend required by DFARS § 252.227-7013; but for whatever reason, the production contract did not incorporate that provision. Pursuant to the production contract, VT Halter built and delivered twenty-four Mark V special-operations craft to the Navy.

In 2004, a division of the Navy awarded a research grant to the University of Maine to improve the ride and handling capabilities of the Mark V craft. Between 2004 and late 2006, the Navy provided numerous, detailed design drawings of the Mark V craft to firms that were acting as contractors for Maine Marine Manufacturing LLC, a joint venture between the University of Maine and a private shipbuilder. Although the design drawings were stamped with the DFARS Limited Rights Legend, the Navy did not obtain VT Halter's consent for the Navy's disclosure to the firms. In 2006, the Navy awarded Maine Marine Manufacturing a contract to design and construct a prototype special-operations craft, known as the Mark V.1, intended to be as similar as possible to the Mark V craft, with only a few changes to improve ride and handling.

When USM discovered that the Navy had disclosed its Mark V design information outside the government, it took pre-suit steps prescribed by the FTCA and then sued

the United States for misappropriation of trade secrets in the federal district court in Louisiana. The FTCA expressly declares the United States subject to liability on certain tort claims—using relevant state law to define the torts—and vests jurisdiction over such claims exclusively in the district courts, thus waiving sovereign immunity for such claims. 28 U.S.C. §§ 1346(b)(1), 2674. In its complaint, USM alleged that the United States owed it a duty to maintain the secrecy of its Mark V design information and to limit its use because of the confidentiality provisions in the contracts and the legends stamped on the design drawings. USM requested damages in the amount of $63,550,000 for the alleged wrongful disclosure by the Navy.

The government moved to dismiss USM's claim for lack of subject matter jurisdiction. Pointing to USM's allegation that the Navy's duty to protect the Mark V design information and drawings arose from the contracts between VT Halter and the Navy, the government argued that USM's claim should be treated as a claim of tortious breach of contract, which could be heard only by the Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1). The district court denied the government's motion, concluding that although the contract "provide[d] the underpinnings of USM[]'s state law trade secret claim," the mere existence of potential non-FTCA claims did not eliminate the district court's jurisdiction over the FTCA claim that USM actually asserted.

After the district court also refused to find that VT Halter was a necessary party to the case, the government brought VT Halter into the case through a third-party complaint seeking to hold it liable for any damages the government might have to pay for the alleged trade-secret misappropriation. In response, VT Halter filed a counterclaim against the United States, adding its own FTCA-based claim for trade-secret misappropriation to USM's. The government moved to dismiss VT Halter's counterclaim on the jurisdictional ground that it already had

unsuccessfully invoked against USM's suit, but the district court denied the motion. Despite arguing that jurisdiction was proper in the Claims Court in both motions to dismiss, at no point during the litigation did the government request a transfer of the case to the Claims Court.

In January 2010, the district court held a two-day bench trial on liability. On April 1, 2010, the court found that the Navy misappropriated Mark V design information by disclosing it to Maine Marine Manufacturing (and its contractors) without VT Halter's or USM's authorization. *U.S. Marine, Inc., v, United States*, No. 08-2571, 2010 WL 1403958, at *6 (E.D. La. Apr. 1, 2010). Regarding the source of the restriction on the government's use of the design information—a necessary element of the tort—the court determined that "[b]oth the contractual provision and limited rights legends were sufficient notification to the government that disclosure of the [Mark V] design would violate a duty to its owners." *Id.* After a separate bench trial on damages, the court held that, although USM and VT Halter failed to prove actual losses or unjust enrichment, they were entitled to approximately $1.45 million in damages as a reasonable royalty for the government's use of the trade secrets.

The government appealed, challenging both the district court's jurisdiction over VT Halter's claim and the damages award. The government did not challenge the district court's jurisdiction over USM's claim. USM and VT Halter cross-appealed to challenge the damages award.

The Fifth Circuit held that the district court lacked jurisdiction over VT Halter's counterclaim under the FTCA. *U.S. Marine, Inc. v. United States*, 478 F. App'x 106 (5th Cir. May 11, 2012). Although VT Halter styled its counterclaim as a tort, the Fifth Circuit ruled that the Navy's alleged duty not to use or disclose the Mark V design information without permission "stem[med] directly from the 'limited rights' provisions found in the VT

Halter-Navy contracts," and the district court had necessarily interpreted those contract provisions in order to determine the Navy's duties with respect to using and disclosing the design information. *Id.* at 110-11. Therefore, the Fifth Circuit reasoned, any claims stemming from the alleged breach of such provisions sounded in contract, not in tort, and were within the exclusive jurisdiction of the Claims Court. *Id.* at 107-08.

Although the government did not appeal the district court's jurisdiction over USM's claim, and indeed stated at oral argument that the Claims Court would not have jurisdiction over USM's claim, the Fifth Circuit *sua sponte* held USM's claim barred from district court for the same reason as VT Halter's. A majority of the panel held that USM's claim, like VT Halter's, was based on the contract between VT Halter and the Navy and was therefore within the exclusive jurisdiction of the Claims Court:

> Like VT Halter's counterclaim, the "limited rights" provisions of the contracts provide the essential basis for USM[]'s claim. We can find no basis for the Navy's potential liability independent of those terms and the duties of non-disclosure they placed upon the Navy. . . . The Tucker Act explicitly forbids such interpretation of federal contracts by the district courts, and there is no potential liability in this case without it.

*Id.* at 111. Perhaps reflecting uncertainty fostered by the changing positions of the government, the majority noted that the lack of privity between the Navy and USM might mean that USM would be denied the right to recover in the Claims Court. *Id.* at 111 n.3. With no further analysis, the court left it to the Claims Court to consider whether USM qualified as an implied third-party beneficiary allowed to enforce the contracts' limited-rights provisions under the Tucker Act. *Id.* The Fifth Circuit vacated the district court's judgment and remanded with instructions to transfer the case to the Claims Court under 28 U.S.C. § 1631. 478 F. App'x at 111.

Judge Elrod dissented in part, disagreeing with the majority's holding that the district court lacked jurisdiction over USM's claim. *Id*. at 112. According to Judge Elrod, because USM was neither a contracting party nor an implied third-party beneficiary to the contract with the Navy, there was no privity between USM and the United States and the claim could not sound in contract, but instead was a tort claim outside the Claims Court's jurisdiction under the Tucker Act and within the district court's jurisdiction under the FTCA. *Id.*

The district court, acting pursuant to the Fifth Circuit's mandate, transferred the case to the Claims Court. USM appealed. This court has jurisdiction under 28 U.S.C. § 1292(d)(4)(A).[1]

## DISCUSSION

For the transfer order to be correct under 28 U.S.C. § 1631, two conditions must be met, as the government expressly agrees: the district court must lack jurisdiction over USM's action, and the Claims Court must have jurisdiction over USM's action. *See* Appellee United States Br. at 30; *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1303 (Fed. Cir. 2008) ("A case may be transferred under [S]ection 1631 only to a court that has subject matter jurisdiction."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (understanding that only a court "that has jurisdiction" can receive a case by Section 1631 transfer); *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 366 n.3 (1998) (Section 1631 "authorizes intercourt transfers, when 'in the interest of justice,' to *cure* want of jurisdiction") (emphasis

---

[1]    Only USM appeals to this court. USM informed us, without contradiction from the government, that VT Halter will not pursue its own claim and has agreed with USM about how to share any recovery. Appellant USM Br. at 3 n.2; Oral Argument at 00:46-1:17.

added); S. Rep. No. 97-275, at 30 (1981) (new Section 1631 "would authorize the court in which a case is improperly filed to transfer it to a court *where subject matter jurisdiction is proper*") (emphasis added).

The Fifth Circuit is a coordinate court, not bound by any ruling this court might independently make on the question. If we were to disagree with that court's judgment requiring transfer, the case would seemingly be left without a forum, unless the Supreme Court intervened. In these circumstances, under the "law of the case" doctrine as explained in *Christianson*, we think that we must affirm the transfer order here unless we conclude that the Fifth Circuit's judgment requiring transfer was "clearly erroneous," *i.e.*, was not even "plausible." *See* 486 U.S. at 819. Whatever result we would reach if we were considering the question de novo, we are not able to draw that conclusion.

A

If one were to look only at the statutory grants of jurisdiction, and start with the statute under which USM brought its claim, transfer here would be hard to support. That is so with regard to both requirements for the Section 1631 transfer: that the district court lack jurisdiction and the Claims Court have jurisdiction.

In the liability-imposing section of the FTCA, with exceptions not applicable here, Congress unequivocally imposed liability on the United States for torts, using state law to define the torts. 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). There is no dispute here, and the Fifth Circuit recognized, that misappropriation of a trade secret is a form of liability-supporting tort that is recognized in Virginia (the relevant state in this case) and more generally. *See U.S. Marine*, 478 F. App'x at 108-09; RESTATEMENT (FIRST) OF TORTS § 757 (1939);

RESTATEMENT THIRD OF UNFAIR COMPETITION § 40 (1995); *Reingold v. Swiftships Inc.*, 210 F.3d 320, 322-23 (5th Cir. 2000) (noting widespread adoption of the Uniform Trade Secrets Act); *Kramer v. Sec'y, United States Dep't of the Army*, 653 F.2d 726, 729-30 (2d Cir. 1980). In 28 U.S.C. § 1346(b)(1), Congress expressly granted district courts, like the Louisiana district court here, jurisdiction to adjudicate such liability.

In contrast, the Claims Court cannot adjudicate USM's claim of tort liability for misappropriation of trade secrets under Virginia law standards made applicable to the United States by Section 2674. In Section 1346(b)(1), Congress committed the adjudication of Section 2674 liability to the "*exclusive* jurisdiction" of the district courts. (Emphasis added.) Nothing on the face of the Claims Court's jurisdictional statute, 28 U.S.C. § 1491, overrides that exclusive commitment. Indeed, as a textual matter, one possible reading of the terms of Section 1491(a)(1), though not the only possible reading, might suggest that the provision does not even apply if a claim both is founded upon on a contract and "sound[s] in" tort.[2]

In short, USM's expressly stated claim is an FTCA claim for liability based on the Virginia law of trade-secret misappropriation. That claim, on its face, is within

--------

[2]    Section 1491(a)(1) covers "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." The grammatical reach of the "cases not sounding in tort" phrase is not immediately apparent. If the phrase were read as attaching to all the enumerated matters ("founded . . . upon any . . . contract . . . in cases not sounding in tort"), it might suggest that Section 1491(a)(1) does not extend to claims with a contract basis if they also "sound[] in tort."

the district court's jurisdiction and is not within the Claims Court's jurisdiction. Without further analysis, those conclusions would make the Fifth Circuit's order to transfer the case wrong on both of the premises required for transfer.

B

The basis for the Fifth Circuit's conclusion can be seen if one changes the analysis in two ways. The first is to begin with the Tucker Act, not with the FTCA. The second is to give prominence to the essential background principle of sovereign immunity and what it means for jurisdiction over claims against the United States.

As relevant here, the Tucker Act, in 28 U.S.C. § 1491(a)(1), grants the Claims Court jurisdiction over a claim "founded . . . upon any express or implied contract with the United States . . . ," and where the claim is for $10,000 or more, the Tucker Act grants jurisdiction over such a claim only to the Claims Court. A similar contract claim, if for less than $10,000, is within the concurrent jurisdiction of the Claims Court and district courts under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). And regardless of the amount at issue, the statutes assign appeals involving such a claim exclusively to this court. 28 U.S.C. §§ 1295(a)(2), (a)(3); *United States v. Hohri*, 482 U.S. 64 (1987).

The forum specification has particular significance in light of the principle of sovereign immunity, which makes the United States generally not amenable to a suit unless Congress has authorized the suit, *i.e.*, waived sovereign immunity. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Block v. North Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 287 (1983). Importantly, the principle of sovereign immunity restricts adjudication to the particular forums in which the sovereign has consented to suit. *United States v. Shaw*, 309 U.S. 495, 501 (1940); *Minnesota v. United States*, 305 U.S. 382, 388 (1939); *McElrath v. United States*, 102 U.S. 426,

440 (1880); *cf. Block*, 461 U.S. at 287 ("[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed . . . ."); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990) (same); *see also College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (forum specificity for state sovereign immunity waivers). Because of those principles, it is fair to say that when Congress limits the waiver to a particular forum, the limitation is an implied, presumptive commitment of the matter to that forum.

Even when Congress has enacted a statute presumptively restricting a matter to a particular forum, Congress can, of course, enact a second statute that modifies the effect of the first statute, routing such a matter either concurrently or exclusively to another forum. Deciding when that has occurred may require close statutory analysis, with particular attention, when the statutes involve sovereign-immunity waivers, to the policies behind the terms defining such waivers. In addition, and of special relevance here, it is a commonplace that a variety of legal claims can arise from the same conduct and involve closely related facts but have different elements and carry different labels like "contract" and "tort" that are used by Congress in different statutes. In that situation, a court may face challenging questions in determining the boundaries between one or more assertedly applicable jurisdictional statutes and deciding how to deal with any overlap of such statutes. When the statutes involve waivers of sovereign immunity, a court deciding where a particular claim may or must be litigated must consider the policies behind the several potentially applicable waivers.

Those principles apply to the Tucker Act, which both confers jurisdiction on the Claims Court and "waive[s] sovereign immunity for claims premised on other sources of law (*e.g.*, statutes and contracts)." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009); *see United*

*States v. Bormes*, 133 S. Ct. 12, 16-17 (2012). Courts have sometimes held that Congress assigned matters otherwise covered by the Tucker Act to other forums. *See, e.g.*, *In re Liberty Constr.*, 9 F.3d 800, 801-02 (9th Cir. 1993) (discussing sue-and-be-sued provisions that might displace the Tucker Act commitment). But when there is no other jurisdictional grant covering a contract claim already covered by the Tucker Act, that Act's conferral of jurisdiction on the Claims Court is exclusive because no other grant exists. *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988) (With no express exclusivity language in the Tucker Act, the Claims Court's "jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by" the Claims Court.). The Supreme Court has explained the policy underlying the presumptive exclusivity: to promote uniformity through forum specification, notably by providing for a single appellate tribunal. *See Hohri*, 482 U.S. at 71-73.

The policy actually at stake has to do with the forum, not directly with choice of law. The Fifth Circuit quoted the Tenth Circuit's recognition of "the strong policy in favor of construing federal contracts under uniform federal law." *Union Pac. R.R. Co. v. United States*, 591 F.3d 1311, 1320 (10th Cir. 2010), quoted at *U.S. Marine*, 478 F. App'x at 110. But it is not clear why federal law would not govern the construction of federal contracts even in an FTCA case generally governed by state law; indeed, federal law is deemed a part of state law. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982). It is the tribunal doing the construing, not the law governing the construction, that clearly distinguishes an FTCA action—tried in district court, with appeal to the regional circuit—from a Tucker Act action—tried in the Claims Court (for claims of at least $10,000), with appeal to this court (regardless of amount).

Accordingly, if one begins with the Tucker Act grant, one must ask, in a case like this, whether the matter at

issue falls within that grant and, if so, whether another statute should be read to grant a district court jurisdiction over the matter despite the Tucker Act. A court must consider whether the matter is within the policy underlying the presumptive congressional commitment to Claims Court/Federal Circuit exclusivity, whether it is within another congressionally enacted policy (*e.g.*, the FTCA's liability-imposing policy, 28 U.S.C. § 2674), and whether the latter displaces the former if both apply.

The Fifth Circuit in this case started with the Tucker Act and proceeded down this analytic path. It held that USM's claim depends on an adjudication of the government's contract obligation, which the Tucker Act presumptively limits to the Claims Court for claims of this magnitude.[3] USM does not dispute that characterization of its claim, which therefore brings into play the Tucker Act's forum policies. The Fifth Circuit must be understood as having then determined that there was no good enough reason to find a congressional displacement, for this case, of the Tucker Act's commitment of major contract-adjudication issues to particular forums.

C

In doing so, the Fifth Circuit followed a number of decisions, going back half a century, involving tort and other non-contract claims that arose out of conduct that also

---

[3]  This view comports with a possible reading of the text of Section 1491(a)(1), under which "in cases not sounding in tort" attaches only to the phrase "for liquidated or unliquidated damages." *See* note 2, *supra* (quoting text and noting alternative possible textual reading). The government seems to adopt this reading: in describing what Section 1491(a)(1) encompasses, it quotes the contract portion with a full stop, without including the "in cases not sounding in tort" phrase as a limitation. Appellee United States Br. at 11.

gave rise to contract claims. Those decisions hold that sometimes a party's tort claim in district court is so rooted in a contract-breach claim that its adjudication outside the Tucker Act's grant of jurisdiction would be an unjustified incursion on the presumptive commitment of contract matters to the forums designated in the Tucker Act. In those cases, any claim of liability under the FTCA, specifically 28 U.S.C. § 2674, was necessarily displaced, because that claim cannot be heard in the Claims Court.

In *Woodbury v. United States*, the Ninth Circuit ruled that a claim against the United States for breach of fiduciary duty, though styled as a tort, should be treated as claim for a breach of contract properly within the jurisdiction of the Claims Court. 313 F.2d 291 (9th Cir. 1963). Mr. Woodbury obtained financing from a federal agency for the construction of prefabricated housing for naval and civilian personnel at Kodiak Naval Base in Alaska. *Id*. at 292-93. He met with financial difficulties during the course of the project, and when the agency filed a foreclosure action in district court, he sued the United States under the FTCA for breach of fiduciary duty for failure to arrange for or provide long-term financing. *Id*. at 293-94. The district court dismissed the claim for lack of jurisdiction, and the Ninth Circuit agreed.

According to the Ninth Circuit, where an "action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the [FTCA]." *Id*. at 296. The court explained:

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the

breach and sue in tort" brings the case within the Federal Tort Claims Act.

*Id.* at 295. The Ninth Circuit added that a different result threatened "the long established policy that government contracts are to be given a uniform interpretation and application under federal law." *Id.* The Ninth Circuit concluded that Mr. Woodbury's claim for breach of fiduciary duty had to be brought under the Tucker Act because liability depended entirely on the contractual promise by the federal agency and whether the agency breached it. *Id.* at 297.

Other cases followed *Woodbury*. In *Davis v. United States*, 961 F.2d 53, 55-57 (5th Cir. 1991), Mr. Davis brought several tort claims against the United States under the FTCA after the Federal Deposit Insurance Corporation assigned his promissory note in alleged violation of the note's non-assignment clause. *Id.* at 55. The Fifth Circuit affirmed the district court's dismissal for lack of jurisdiction, concluding that each of the claims, though pleaded in tort, was "predicated upon the breach of [the] condition in the promissory note." *Id.* at 56. In *Wood v. United States*, 961 F.2d 195 (Fed. Cir. 1992), this court considered whether the district court had properly transferred Mr. Wood's tort claims to the Claims Court. We held that, because Mr. Wood's primary complaint was that the government had failed to provide an allegedly promised certificate of airworthiness, and his only viable claims depended on that contract claim, jurisdiction lay only in the Claims Court under the Tucker Act. *Id.* at 198.

Several other cases have reached a similar conclusion. *See Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351, 359 (5th Cir. 1965) (holding that the plaintiff's claim could not be brought under the FTCA where "the sole relationship between [plaintiff] and the United States was wholly contractual in character" and plaintiff's claims "relate[d] exclusively to the manner in which various government officials . . . performed their respon-

sibilities with respect to the execution of the contract"); *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995) (claim for a taking under the Fifth Amendment of the United States Constitution must be brought in the Claims Court under the Tucker Act, "even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case"); *Friedman v. United States*, 391 F.3d 1313 (11th Cir. 2004) (affirming a determination that jurisdiction was proper in the Claims Court where the plaintiff included claims sounding in tort, but those tort claims were grounded in or turned on the interpretation of a settlement agreement with the United States). Other decisions have found particular contract connections insufficient to require Claims Court adjudication of particular matters. *E.g.*, *Love v. United States*, 915 F.2d 1242, 1245-47 (9th Cir. 1989) (holding that a conversion claim sounded in tort, not contract); *Aleutco Corp. v. United States*, 244 F.2d 674, 678 (3rd Cir. 1957) ("The fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into one in contract.").

This court in *Awad v. United States* held that certain tort claims arising out of an alleged agreement with the United States could be brought only in the Claims Court. 301 F.3d 1367, 1375 (Fed. Cir. 2002). Upon entering the United States Marshals Service's Witness Security Program, Mr. Awad signed a Memorandum of Understanding in which the government stated that it would return his foreign-issued passport if he left the program. *Id.* at 1369. He also alleged that officials of the government told him that he would receive United States citizenship and a United States passport in return for his testimony against an alleged terrorist. *Id.* After cooperating with the government, Mr. Awad withdrew from the witness-protection program; but the government neither returned his foreign-issued passport, nor helped him to obtain a United States passport or United States citizenship. *Id.* at 1369-70.

Mr. Awad filed several tort claims against the United States in district court. The district court, after determining that his tort claims depended on the government's breach of its alleged contractual obligations, concluded that it lacked jurisdiction and transferred the case to the Claims Court. *Id.* at 1370-71. On appeal, we affirmed the transfer decision under the reasoning in the *Woodbury* line of cases. We explained that there was no "statutory or common law basis for a duty on the part of the government to provide [Mr. Awad] with U.S. citizenship and a passport"; rather, any duty the United States owed to Mr. Awad was purely contractual. *Id.* at 1373-74. Because Mr. Awad's action sounded in contract, and not in tort, and was for more than $10,000, jurisdiction could lie only in the Claims Court. *Id.* at 1375.

## D

As already noted, in those cases the plaintiffs necessarily lost the ability to pursue FTCA tort claims when the matters were routed to the Claims Court. The fact that transfer of USM's case to the Claims Court will cause it to lose its tort claim as pleaded, therefore, does not distinguish this case from those. The argument over the application or distinction of the *Woodbury* line of cases, instead, focuses on what claims would be meaningfully available in the Claims Court upon transfer.

In at least most of the cases in the *Woodbury* line, the plaintiffs had the kind of asserted privity of contract with the United States that readily permits litigation of the issues of contract breach, injury, and damages under the Tucker Act (subject to generally applicable requirements such as timeliness). In that circumstance, transfer to the Claims Court, while depriving the plaintiff of the ability to press an FTCA tort claim, seemingly leaves the plaintiff with a cause of action that, upon proper proof, permits recovery of compensation for contract-related harm caused by the United States. USM's case is challenging for application of the *Woodbury* principle precisely because of the arguable difference in that respect. But for

two reasons together, we are not prepared to say that the Fifth Circuit's reliance on the *Woodbury* principle is clearly in error.

1

It is not clear whether a meaningful opportunity for recovery in the Claims Court is always a necessary requirement for application of the principle implemented in the *Woodbury* line of cases. The policy implicit in the Tucker Act's presumptive commitment of government-contract adjudications to the Claims Court (except for small claims) and to this court (for all claims) conceivably might be impaired by allowing another forum to construe a government-contract provision even if the Claims Court could not do so in the particular case. Such a construction might impair the government's interest in uniform construction of a provision, like a standard DFARS provision, that is widely used in the government's contracts. Perhaps, too, if a plaintiff's non-contract claim depends essentially on establishing a contract breach, and the applicable contract law deliberately withholds a right of enforcement from the particular plaintiff, the congressional policy implicit in the Tucker Act might be thought to bar that plaintiff's non-contract claim because allowing it would circumvent that enforcement limitation. More broadly, appeals to the idea that wrongs presumptively have remedies, which often has great force in resolving genuine uncertainties in statutory interpretation, require special caution where the wrongdoer is the United States, which, by virtue of sovereign immunity, generally cannot be sued even for harm it wrongfully inflicts except where it consents to suit. *See United States v. Testan*, 424 U.S. 392, 401-02 (1976). For these reasons, we cannot easily dismiss (while we need not affirmatively embrace) the notion that an apparent congressional bar on adjudication of the United States' contractual duties outside the Tucker Act forums can prevail even when the result is to preclude recovery for harm.

In fact, in not all of the *Woodbury* line of cases is it truly clear that a remedy was meaningfully available in the Claims Court. For example, in *Wood*, we noted the possibility that the plaintiff could face significant hurdles to recovery in the Claims Court: "remedies beyond damages, such as specific performance, are not available," and whether jurisdiction ultimately lay in the Claims Court required inquiry into whether there was "privity between Wood and the government." 961 F.2d at 199. And in *Awad*, although we affirmed the transfer order, we left it to the Claims Court to determine in the first instance whether the contract at issue subjected the government to monetary liability for a breach, a necessary prerequisite for Tucker Act jurisdiction. 301 F.3d at 1374-75.

2

This case, however, does not require us to adopt or to reject the starker potential view of a Tucker-Act-exclusivity principle, because we cannot say that USM itself lacks a meaningful remedy under the Tucker Act in the Claims Court. Unable to exclude the availability of a meaningful Tucker Act remedy for USM, we are not prepared to conclude that USM's position differs materially, in the respect USM rightly features as its strongest point, from that of most plaintiffs in the *Woodbury* line.

This is not because we recognize a meaningful possibility that USM can litigate a *tort* claim in the Claims Court. If a tort claim is brought under the FTCA, it plainly cannot be adjudicated in the Claims Court, because Section 1346(b)(1) gives the district court exclusive jurisdiction over such claims. But that conclusion does not itself exclude the possibility of recognizing non-FTCA tort claims as claims that are "founded . . . upon an express or implied contract . . . ." Indeed, as a purely textual matter, it is hardly unreasonable to conclude that, if the Tucker Act's "founded . . . upon" language displaces another court's jurisdiction over a tort claim because that tort claim is "founded . . . upon" a contract, that language must affirmatively embrace tort claims where they are

"founded . . . upon" a contract. In that view, the Tucker Act's language would have the same scope for what it affirmatively embraces as for what it impliedly excludes from other courts. But history counts strongly against allowing adjudication of any "tort" claims under the Tucker Act.

Based on the background principle of sovereign immunity, the familiarity of the contract/tort distinction, and the language of the Tucker Act, this court's predecessor long ago recognized: "Congress has always withheld from this court and from the Tucker Act original jurisdiction over tort claims against the government." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1010 (Ct. Cl. 1967) (citing Supreme Court authorities). Ample authority supports that recognition. *See Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("tort cases are outside the jurisdiction of the Court of Federal Claims today") (footnote omitted); *Hohri*, 482 U.S. at 72 n.4 (relying on *Eastport's* discussion of noncontractual liability under the Tucker Act); *Gibbons v. United States*, 75 U.S. (8 Wall.) 269, 275 (1868) ("The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts.").[4] That categorical view, limiting Tucker Act contract-based claims to claims allowed by contract law, fits the requirement that, for Tucker Act jurisdiction, "other sources of law (*e.g.*, statutes and contracts)" must authorize compensation to the plaintiff upon proof of the specified wrong and injury. *Navajo Nation*, 556 U.S. at 290; *Bormes*, 133 S. Ct. at 16-17. Whereas a contract implicitly carries that authorization to the extent of contract-law remedies, *see Holmes v.*

---

[4]    Regardless of its precise grammatical role in Section 1491, the presence of the phrase "in cases not sounding in tort" suggests that tort claims are outside the enumeration of covered claims.

*United States*, 657 F.3d 1303, 1314 (Fed Cir. 2011), an additional tort remedy would seem to need separate congressional authorization outside the Tucker Act. In any event, we are not prepared to initiate what would be a sea-change in Tucker Act law to find a tort claim cognizable in the Claims Court.

Instead, we rest our conclusion about the possibility of a meaningful Tucker Act remedy for USM on other grounds. The first is that it now appears that USM can pursue a contract claim, in the specific sense that it can proceed directly to litigate whether the government breached a contract-based obligation (regarding USM's trade secrets), the harm caused, and the appropriate quantification of damages. The Fifth Circuit expressly ruled that "USM[] was a subcontractor to VT Halter with respect to the VT Halter-Navy contracts," while noting that it would ultimately be for the Claims Court to decide what contract-enforcement rights USM had. *U.S. Marine*, 478 F. App'x at 111 & n.3.[5] That ruling is subject to the law-of-the-case doctrine, with its protections and limitations, as to both USM and the government.

In any event, the government's jurisdictional position here, together with our acceptance of it, legally settles the threshold question whether USM is among those authorized to recover upon proof of breach of contract, injury, and amount of damages. As in the district court (but not in the Fifth Circuit), the government has now affirmatively urged that the Claims Court has jurisdiction under the

---

[5]   Although the general rule is that "[a] plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim," *First Annapolis Bancorp, Inc. v. United States*, 644 F.3d 1367, 1373 (Fed. Cir. 2011) (citing authorities), a third party sometimes may recover damages for the government's breach of a contractual duty, *see, e.g.*, *D&H Distrib. Co. v. United States*, 102 F.3d 542, 546-47 (Fed. Cir. 1996).

Tucker Act's "founded . . . upon an express or implied contract" provision.[6]  Under this court's precedents, that position requires—and if the position is now accepted by this court, as it is, thus legally establishes—the premise that USM is within the class of those authorized to recover upon proof of breach of contract, injury, and amount of damages.

Specifically, this court has expressly held that whether the plaintiff is among those who may recover upon proof of the asserted wrong is part of the jurisdictional inquiry for the Tucker Act: there is no jurisdiction unless the plaintiff is among such persons. *Greenlee Cnty. v. United States*, 487 F.3d 871, 876 & n.2 (2007); *see Jan's Helicopter Serv.*, 525 F.3d at 1308 (case cited "passim" by the United States in its brief here).  That rule, though established in cases involving the Constitution-and-laws clause of the Tucker Act, must apply to the contract clause, which merely sets forth a source of compensation authorization parallel to those covered by the Constitution-and-laws clause.  *See Navajo Nation*, 556 U.S. at 290 (Tucker Act "waives sovereign immunity for claims premised on other sources of law (*e.g.*, statutes and contracts)"); *Bormes*, 133 S. Ct. at 16-17 (same); *see also*

---

[6]    In the Fifth Circuit, the United States did not urge that USM's action was within the jurisdiction of the Claims Court or outside the district court's jurisdiction (although it had made a motion so arguing in the district court).  Now it has made both arguments.  In particular, it has argued that the Claims Court has "jurisdiction" over a contract claim by USM (directly under the Tucker Act, the government clarified at oral argument, not under the Contract Disputes Act, which applies only to "contractors").  Appellee United States Br. at 22, 25-26 (defending "subject matter jurisdiction in the Court of Federal Claims of this matter"), 27, 33-43; Oral Argument at 24:19-25:00, 26:32-52, 27:56-28:20.

*United States v. Mitchell*, 463 U.S. 206, 216 (1983) ("[T]he Act makes absolutely no distinction between claims founded upon contracts and claims founded upon other specified sources of law."). Given those principles, the government's assertion that the Claims Court has jurisdiction over USM's claim entails that USM is among those entitled to recover upon proof of the wrong at issue here, namely, the government's breach of contract, and proof of injury and amount of damages.

In short, the government's argument for the Claims Court's jurisdiction (made here and in the district court, but not in the Fifth Circuit) legally acknowledges that USM is entitled to get to the breach, injury, and damages questions, having cleared the threshold of being among those with a right to recover upon satisfactory proof on those questions. And it follows that this court's action in now adopting the government's argument and affirming the transfer order, which depends on the Claims Court's having jurisdiction, establishes that right, as a matter of binding precedent and judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742 (2001) (judicial estoppel). While USM has until now sought to deny its right to recover in contract in the Claims Court, it may well be able to do so once the case is transferred to the Claims Court based on the government's jurisdictional argument.

The second reason for our conclusion that USM may have a meaningful remedy in the Claims Court concerns the possibility that USM has a takings claim. The Supreme Court has held that a government use or disclosure of a trade secret can constitute a taking for which, under the Fifth Amendment, the United States must pay just compensation. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-04 (1984) (trade secrets protected by Takings Clause); *id.* at 1011-14 (disclosure or use by the government contrary to restrictions under which the government received trade-secret information may be a compensable taking). The Tucker Act, in 28 U.S.C. § 1491(a)(1), embraces takings claims within its coverage of claims

"founded . . . upon the Constitution . . . ." *See Preseault v. I.C.C.*, 494 U.S. 1, 12 (1990); *Ruckelshaus*, 467 U.S. at 1016-17; *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 126 (1974); *United States v. Causby*, 328 U.S. 256, 267 (1946). In a recent non-precedential opinion, this court has recognized the point, reversing a dismissal of a takings claim involving trade secrets. *Gal-Or v. United States*, 470 F. App'x 879 (Fed. Cir. 2012).

Under that authority, USM may have a claim for compensation under the Tucker Act, a claim that may, among other things, relate back to the original complaint for limitations purposes. We do not say that USM has such a claim, because the case has not been pled in that form (the case not having been in a forum where such pleading was possible), and the issue therefore has not been explored. Nor do we say anything about the merits of such a claim if USM can assert it. We say only that such a claim may be available to USM; if so, the claim might provide USM a meaningful compensatory remedy for the wrong and injury it alleges.

If USM has a meaningful remedy in the Claims Court, USM's strongest argument for seeking to distinguish the *Woodbury* line of cases, and for criticizing the Fifth Circuit's resolution of the boundary problem for the FTCA and Tucker Act in this case, weakens substantially. On that premise, the transfer question does not depend on the stark and much more problematic assertion that the interest in uniform Claims Court (and Federal Circuit) adjudication of government-contract obligations, an interest embodied in the Tucker Act, is so strong as to justify stripping an injured party of any right to compensation, including the right Congress expressly granted in the FTCA's Section 2674. If USM has a meaningful remedy in the Claims Court, both of the congressionally declared interests—the forum-specificity interest and the compensation interest—can be meaningfully preserved. We are not prepared to conclude that this case clearly requires sacrifice of the compensation interest.

CONCLUSION

We need not say whether we would draw a conclusion different from that of the Fifth Circuit if we were freshly conducting the analysis of the interaction of the FTCA and Tucker Act schemes. When the general Tucker Act's reach overlaps with that of another statutory regime, it is certainly possible that the other regime is the one that takes precedence. But we cannot say that the Fifth Circuit's determination, that in this case it is the FTCA that gives way, is clearly wrong.

The Fifth Circuit ruling that the case must be transferred to the Claims Court is law of the case. Applying that doctrine, we affirm the resulting transfer order. In doing so, we necessarily hold that the Claims Court has jurisdiction over USM's suit, with all that entails under this court's precedents about the issues thereby resolved. At this point, this case presents even more than the usual reasons for litigation to proceed with expedition and with minimization of wasteful duplication.

No costs.

**AFFIRMED**